DAVIS & ROESCH TEMPERATURE CONTROLLING CO. v. TAGLIABUE et al.

(Circuit Court of Appeals, Second Circuit. February 11, 1908.)

No. 98.

1. PATENTS—ASSIGNMENTS—CONTRACTS—CONSTRUCTION—"COMPLETED."
Where an assignment of certain patents included all inventions of like nature or similar thereto which might thereafter be completed, the word "completed" was not used in the sense of "conceived," but should be construed to mean the finishing or perfection of something already commenced other than the bringing into existence of a new thing, and the assignor having testified that it was only desired that he should assign the invention for which applications for patents had been filed and those he was working on at the time, the word "completed" could not be given a broader signification so as to include inventions which had not been conceived at the time the assignment was executed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 328.

For other definitions, see Words and Phrases, vol. 2, pp. 1366–1368.]

2. SAME—BONA FIDE PURCHASER.
Where a contract for the assignment of certain patents included inventions of a similar nature which the patentee might thereafter complete, the assignee of a subsequent invention not conceived by the party at the time such contract was executed, though with actual knowledge of such previous assignments, was not chargeable with notice that the word "complete" was intended to be given an extraordinary interpretation to include inventions not then conceived.

3. SPECIFIC PERFORMANCE—CONTRACT—CERTAINTY.
If a contract is so uncertain or ambiguous that it requires testimony of subsequent dealings to make its meaning clear, it may not be specifically enforced in equity against a purchaser for value whether with or without notice of its provisions.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, § 61.]

Appeal from the Circuit Court of the United States for the Eastern District of New York.

For opinions below, see 148 Fed. 705; 150 Fed. 372.

L. B. Kennison and Jay Noble Emley, for appellants.
J. C. Chapin, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge. This is a suit in equity for the specific performance of a contract entered into on October 11, 1897, by the complainant and the defendant Roesch under which the complainant claims to be entitled to two inventions made by said defendant and assigned by him to the defendant Tagliabue. The contract follows:

"Whereas, I, Alfred Roesch, of the city of Brooklyn, county of Kings and state of New York, have invented certain new and useful improvements in air and fluid controlling and regulating devices, and have filed applications for United States letters patent therefor, which applications were filed and numbered as follows:

"Serial No. 618,160, filed January 6, 1897, for air controlling device;

"Serial No. 639,757, filed June 7, 1897, for automatic temperature regulator for water heaters;

"Serial No. 639,758, filed June 7, 1897, for automatic temperature regulator;

"Serial No. 639,759, June 7, 1897, for air controlling valve mechanism;

"Serial No. 639,760, filed June 7, 1897, for device for actuating fluid controlling valves by fluid pressure; and

"Whereas, the Davis & Roesch Temperature Controlling Company, a corporation organized under and pursuant to the laws of New Jersey, are desirous of acquiring the entire interest in said inventions and the letters patent to be obtained therefor:

"Now, therefore, to all whom it may concern be it known, that for and in consideration of the sum of one dollar to me in hand paid, the receipt of which is hereby acknowledged, I, the said Alfred Roesch, have sold, assigned and transferred, and by these presents do sell, assign and transfer unto the said Davis & Roesch Temperature Controlling Company the full and exclusive right to the said inventions as fully set forth and described in said various applications filed and numbered as aforesaid, and any and all inventions of like nature or similar thereto which I have already completed, or which may hereafter be completed by me. I do hereby authorize and request the Commissioner of Patents to issue the letters patent granted upon the foregoing applications to the said Davis & Roesch Temperature Controlling Company as assignee of my entire right, title and interest in and to the same and the inventions therein contained, for the sole use and behoof of the said Davis & Roesch Temperature Controlling Company and its legal representatives.

"In testimony whereof, I have hereunto set my hand and affixed my seal this 11th day of October, 1897.                    Alfred Roesch. [Seal.]"

The inventions which the complainant seeks to have transferred to it under its prayer for specific performance had not been conceived at the time of the execution of said contract. The question of primary importance in the case, therefore, is whether such inventions are included within the phrase, "inventions of like nature * * * which may hereafter be completed by me."

The word "complete" is generally defined to mean: to finish; to perfect; to bring to a desired condition or end. It ordinarily signifies the full accomplishment of something already commenced rather than the bringing into existence of something new. Inventions conceived by Roesch at the time of the execution of the contract and subsequently reduced to concrete form came precisely within the terms of the contract. But, as we have seen, this interpretation does not include the inventions in question.

The complainant, however, claims that, under all the circumstances, this word "completed" should be given a broader meaning—that it should be so interpreted as to embrace all inventions of the nature stated which Roesch should make in the future. And this contention

is not without foundation.   It would certainly seem the parties must have intended that the corporation should receive all that Roesch had previously assigned to the partnership, viz., all future inventions auxiliary to, or complementary of, the original inventions.   Still Roesch testified that it was only desired that he should assign the inventions for which applications for patents had been filed and those he was working on at the time, and the language of the assignment coincides with this claim.   It is difficult to understand why the word "completed" should have been used unless it were used advisedly.   It would have been easy to use a term of broader signification.

In view of the whole situation, therefore, and bearing in mind that this is not a bill to reform an instrument, we are unable to hold, as against the defendant Tagliabue, a purchaser for value of the patents in question, that the verb "completed" should be given any other than its ordinary meaning.   Assuming Tagliabue's actual knowledge of the assignment, he is not chargeable with notice that its language should receive an extraordinary interpretation.

The language of the contract is not uncertain.   Its meaning can be drawn from within the four corners of the instrument.   No ambiguity is apparent.   There seems to be no need of evidence of practical construction.   And yet both sides have taken and presented a vast mass of testimony as to what the parties said, did, and wrote under the contract and with respect to it after it was executed.   It is sufficient to say, regarding this testimony, that if the contract were so ambiguous and uncertain as to require testimony of subsequent dealings to make its meaning clear it would not be a contract which a court of equity would specifically enforce as against a purchaser for value with or without notice of its provisions.   Uncertainty as to the meaning of a contract is fatal to a claim for its specific performance.

The decree of the Circuit Court is reversed, with costs.