# FISK RUBBER COMPANY *v.* MULLER.

CONFLICT OF LAWS; CONTRACTS; PRINCIPAL AND SURETY; INDEMNITY
CONTRACTS; SURETYSHIP; MARRIED WOMEN.

1. Where each of two written agreements refers to the other, and one sup-
plements the other, they must be considered and read together as one
contract.

2. It is a general principle that a contract is to be governed by the law
with a view to which it was made, and this is a question of inten-
tion, to be deduced, when not expressly declared, from the place,
terms, character, and purposes of the transaction. (*Croissant* v.
*Empire State Realty Co.* 29 App. D. C. 538.)

3. A contract of suretyship contained in an agreement whereby the princi-
pal obligor was appointed an agent in the District of Columbia to
sell goods on consignment for the obligee, a nonresident corporation,
is governed by the law of the District in the absence of any circum-
stance to show that it was made with reference to the law of any
other jurisdiction, and it is immaterial that the obligee signed the
agreement in the State where it had its principal place of business.

4. A married woman's contract to indemnify another and save him harm-
less from the default of one whom the latter appointed his agent
is void under sec. 1155, D. C. Code [31 Stat. at L. 1374, chap. 854],
declaring that no married woman shall have power to make any
contract as surety or guarantor. (Citing *Waters* v. *Pearson,* 39 App.
D. C. 10.)

No. 2614.   Submitted February 5, 1914.   Decided March 2, 1914.

HEARING on an appeal by the defendant from a decree of the
Supreme Court of the District of Columbia declaring certain
suretyship contracts null and void as to plaintiff and directing
the return to her of certain shares of stock.      *Affirmed.*

The COURT in the opinion stated the facts as follows:

Appeal from a decree for Kate H. Muller, the appellee, in
the supreme court of the District, declaring null and void as

to her certain suretyship contracts, and directing the return to her of thirty shares of stock of the Western Union Telegraph Company.

The case was heard on bill and answer, and the facts are substantially these: On the 13th of May, 1912, an agreement was entered into between appellant, the Washington Auto Supply Company, a corporation organized under the laws of the District of Columbia, and appellee and her husband, Michael R. Muller. In this agreement the appellant is described as "a corporation of the State of Delaware." The agreement provides that the supply company is to act as the agent of the Fisk Rubber Company, the appellant, "for the sale of Fisk automobile tires, bicycle tires, and listed sundries in the District of Columbia." Appellant was to "consign to the party of the second part (the supply company) a working stock." This stock was to be subject to inspection by the "Baltimore manager" of the appellant, and semimonthly settlements were to be made, the Baltimore manager or other duly authorized agent to represent the appellant. The agreement sets forth that in order more fully "to secure the performance of the covenants and the making of the payments hereinafter covenanted to be made by the said party of the second part unto the party of the first part, and to indemnify and save harmless the said party of the first part," etc., the parties of the third part (Mr. and Mrs. Muller) "have united herein as sureties in the amount of two thousand dollars." It is further specified that in order to secure the payment of the amount of this indemnity "promptly and without recourse to a suit at law or in equity, the said parties of the third part have, by an agreement of trust of even date," assigned to trustees the stock here in question. It does not appear from the instrument itself where this agreement was executed. In the bill and answer, however, it appears that the supply company and the Mullers signed it in the District of Columbia, while the appellant signed it in Chicopee Falls, Massachusetts, which, the answer alleges, is its principal place of business. Nowhere in the agreement does this last fact appear, nor is any allusion there made to Chicopee Falls. The

trust agreement, contemporaneously executed and to which the first agreement in terms refers, alludes to the first agreement and that the supply company has been "appointed the agent of the Fisk Rubber Company, for the sale of Fisk tires in the city of Washington," and that "in order to more effectually secure to the said Fisk Rubber Company the performance of the agreement thereby entered into by the said Washington Auto Supply Company, the said parties of the first part (appellee and her husband) did unite therein as sureties, in the sum of two thousand dollars."

The supply company having defaulted in payment, and the trustees under the trust agreement having threatened to sell the stock held by them under that agreement, this bill was filed.

*Mr. W. Conwell Smith* and *Mr. Edmund Brady* for the appellant.

*Mr. William E. Ambrose* and *Mr. Charles H. Merillat* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

We fully agree with the learned trial justice that these two agreements must be considered as one contract. Each alludes to the other, and the second supplements the first. "Reading the two papers together," said the trial justice, "it is clear that the object of both was the guaranty to the Fisk Rubber Company of the indebtedness which might accrue from the said supply company in the future, by sales made by the former to the latter company. Both papers expressly state that the plaintiff and her husband are sureties for the said supply company; and the liability which the second paper was made to protect was the liability of the plaintiff as surety under the first part of the contract." The real question for determination, therefore, is whether this contract is to be controlled by the laws of the District of Columbia.

"The general principle is that a contract is to be governed

by the law with a view to which it was made, and this is a question of intention, to be deduced, when not expressly declared, from the place, terms, character, and purposes of the transaction." *Croissant* v. *Empire State Realty Co.* 29 App. D. C. 538. Not only, therefore, must the terms of the contract be examined, but the attendant circumstances must be taken into consideration to determine by what law it is to be governed. *Coghlan* v. *South Carolina R. Co.* 142 U. S. 101, 35 L. ed. 951, 12 Sup. Ct. Rep. 150; *Hall* v. *Cordell,* 142 U. S. 116, 35 L. ed. 956, 12 Sup. Ct. Rep. 154. In the case last cited the court held that an obligation to perform a verbal agreement made in Missouri to accept and pay, on presentation at the place of business of the promisor in Illinois, drafts drawn upon him by the promisee for live stock to be consigned by the promisee from Missouri to the promisor in Illinois, was to be determined by the law of Illinois, the place of performance. The court said: "Nothing in the case shows that the parties had in view, in respect to the execution of the contract, any other law than the law of the place of performance. That law, consequently, must determine the rights of the parties." See also: *Pritchard* v. *Norton,* 106 U. S. 124, 27 L. ed. 104, 1 Sup. Ct. Rep. 102.

Tested by the foregoing rule it is apparent that the contention that the rights of the parties in the contract under consideration are to be determined by the laws of Massachusetts is a mere afterthought. Nowhere in this contract does the word "Massachusetts" appear, and the mere fact that the first of the two parts of the contract was sent to Massachusetts for the signature of the appellant is of no consequence. The contract was to be performed here. By its terms the supply company was made appellant's agent in this District, and nowhere else. There was but one place where a default in payment could occur, and that was here. This was fully recognized by the parties, since the stock put up by appellee under the suretyship part of the contract was held here by the trustees, and it was here, in case of a default, that the sale of that stock was to take place. In short, there is not a line in the contract, nor a circumstance surrounding the transaction, to indicate that

D. C.] Syllabus.

the parties had in view, in respect to the execution of their agreement, any other law than that of the District of Columbia. The law of this jurisdiction, therefore, must determine the rights of the parties.

The suretyship agreement, so far as it affected appellee, was clearly obnoxious to sec. 1155 of the Code [31 Stat. at L. 1374, chap. 854], which declares "that no married woman shall have power to make any contract as surety or guarantor, or as accommodation drawer, acceptor, maker, or indorser." *Waters* v. *Pearson,* 39 App. D. C. 10.

The decree must therefore be affirmed, with costs.

*Affirmed.*