## CLEBORNE v. TOTTEN.
### No. 5350.

Court of Appeals of the District of Columbia.
Argued Feb. 5, 1932.
Decided March 7, 1932.

Cornelius H. Doherty, of Washington, D. C., for appellant.

436

Howard Boyd and Helen Boyd, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal in a suit relating to the specific performance of a contract.

In the lower court the appellee as plaintiff sought a decree against appellant as defendant for the specific performance of an alleged contract between the parties, whereby, as alleged, the plaintiff had leased to the defendant certain real estate situate in the city of Washington, D. C., for the term of three years at a stipulated rental, which contract it was alleged defendant had failed to perform, and also praying for a decree against the defendant as lessee for the amount of rent due and to become due to plaintiff as lessor under the terms of the contract.

The defendant answered, and among other things denied that the parties had ever entered into the alleged contract sued upon. A trial was had, and the court found upon the evidence in favor of the plaintiff, and entered a decree for specific performance against defendant as prayed by the plaintiff, together with a decree for $3,950 as rental due from defendant to plaintiff under the lease. The court also ordered that jurisdiction of the cause be retained until full and complete payment be made to the plaintiff of all sums which might thereafter become due under the lease.

An appeal was taken by the defendant, and we have before us the record containing all of the evidence heard at the trial below. In our opinion it utterly fails to show that the parties ever entered into the alleged contract for a lease upon which the decree of the lower court was based.

The evidence discloses that on February 1, 1925, plaintiff was the owner of the residence property known as 1708 I Street N. W., in the city of Washington, D. C., and on that day leased the property to the defendant by a written lease for a term of three years, and that defendant went into the possession of the premises under the lease; that in March, 1927, about 11 months before the expiration of the lease, the defendant sent the following letter to the plaintiff;

"Dear Mr. Totten: July is the only time I can have such work as papering and painting attended to, as my house is practically empty this month (July), besides the papering there is quite a sum of money I shall have to put in the house. If I am to leave next February 1st it is not necessary my going to this expense. If you will make out a new lease for three years, dating from next February 1st and do the papering so as to give me the assurance that I am to remain, I will then know just exactly how I stand and what to do. I know you are busy, so thought I would write you exactly how this matter stands with me. You can think it over and come prepared to say just what you will do.

"Trusting I have put this matter plainly and squarely before you,

"Yours truly,

"E. L. Cleborne."

In answer to this letter the plaintiff wrote to defendant as follows:

"My Dear Mrs. Cleborne: My regular paperhanger will inspect your house in a few days and report to me. I shall then see you and make our plans for next year.

"I have your letter of recent writing, undated.

"The paperhanger is a colored man, named Wm. H. Gray, and is a much better workman than the one who papered the house before.

"Yours,

"Howe Totten.

"2/24/27."

In July, 1927, after this work was completed defendant wrote to plaintiff as follows:

"Sunday, 1708 Eye Street.

"My Dear Mr. Totten: Johnson with his men have finished up here the work you gave them to do. He is a good man and has such nice men to work for him, to me, they certainly scraped and prepared all walls very well before papering. I am well pleased and thank you very much. The basement hall flooring seems very well laid also. A great relief, as it was in very bad condition. Won't you please have the kitchen gone over? I have done a great deal to all downstairs floors, oiled and waxed—last summer 4 of the carpet (?) rooms were too impossible to be used, as I wanted them at once, had the Philadelphia Paper Hanging Co. scrape and repaper—so the whole house now looks very attractive. Thanking you most sincerely,

"Yours truly,

"E. L. Cleborne."

On October 5, 1927, the plaintiff wrote to defendant as follows:

"October 5th, 1927.

"Mrs. Cornelia L. Cleborne, Washington, D. C.

"My Dear Madame: In accordance with your several requests, I am enclosing herewith two copies of a lease on premises No. 1708 I St. NW. this city, now occupied by you. This lease is executed on a blank form in every respect identical with the one on which the current lease is executed, and it is, in its every provision, identical with the current lease, with the one exception that in the current lease the agreement that you shall make all repairs except to the roof does not appear, but was the subject of a verbal agreement, later ratified between you, your attorneys, Messrs. Duckett & Duckett, and my attorney, Nelson Wilson, and me; while this new lease carries that clause printed in the face.

"Please sign both of these and return both to me. I will then sign both and return one to you.

"Trusting that I may have this matter closed very soon, I am,

"Very truly yours,

"Howe Totten."

Plaintiff at this time forwarded two copies of a new lease to defendant, neither of which was signed by plaintiff, nor was either ever signed by defendant, or returned to plaintiff. The defendant, instead, notified plaintiff that she would vacate the premises at the termination of the first lease, to wit, February 1, 1928.

On December 21, 1927, the plaintiff wrote to defendant as follows:

"December 21st, 1927.

"Mrs. Cornelia L. Cleborne, Washington, D. C.

"Madame: Yesterday I received your letter, undated, stating your intention of vacating premises #1708 I Street NW. now under lease to you by me, on February first, 1928.

"On or about March 22nd I received from you an undated letter stating that if I would make certain extensive repairs, improvements, and decorations to the house, and would send you a lease for three years more, you would execute it. You particularly asked that the work be done in the following July, as your house would be practically empty then. Accordingly I sent a contractor to see you, to whom you indicated everything you desired, and in July everything requested, as well as considerably more which you demanded as afterthoughts, were completed to your entire satisfaction. On July 25th I received from you an undated letter stating as follows: 'Johnson with his men have finished up here the work you gave them to do. I am well pleased and thank you very much. The whole house now looks very attractive. Thanking you most sincerely.' Upon receipt of that I then paid the contractor. Thereupon, on the fifth day of October, 1927, nearly four months before the expiration of the present lease, I sent you two copies of a lease as requested by you, for your signature. These you have retained in your possession up to this date, something over two months and a half, and you have not sent me any draft of such lease as might suit you better.

"I shall, if and when you vacate the premises, endeavor to rent the house for your account, but I assure you most positively that I shall take legal action to secure rent from you for every month the property may be vacant; for you are legally under contract to me to lease the house for three more years.

"Truly,

"Howe Totten."

It may be noted here that the plaintiff's statement contained in this letter to the effect that the defendant had written that, if he would make certain repairs and send her a lease for three years more, she would execute it, is incorrect. The letter referred to is copied in full herein, and no such promise appears in it.

These writings comprise the substance of all the evidence adduced in the case. They disclose that the parties entered into negotiations respecting a new lease for the premises, with the understanding that such a lease, if agreed to, should be in writing and be signed by both parties. No such instrument, however, was ever executed by them, and several months before the termination of the first lease the defendant gave the plaintiff written notice that she did not intend to execute another lease for the premises. Consistently with this notice defendant vacated the premises, whereupon the plaintiff undertook, nevertheless, to hold her for the rent accruing during the three years succeeding February 1, 1928. The evidence fails to support such a claim.

In Williams Carr v. Samuel H. Duval et al., 14 Pet. 77, 81, 10 L. Ed. 361, it is said by Mr. Justice Catron:

"The rule laid down by this court in Elia-

son v. Henshaw, 4 Wheat. 228 [4 L. Ed. 556], is, that an offer of a bargain by one person to another, imposes no obligation upon the former, unless it is accepted by the latter, according to the terms in which the offer is made; and that any qualifications of, or departure from, the terms, invalidates the offer, unless the same be agreed to by the person who made it. Until the terms of the agreement have received the assent of both parties, the negotiation is open, and imposes no obligation on either. * * * If it be doubtful whether an agreement has been concluded, or is a mere negotiation, chancery will not decree a specific performance."

"A decree for specific performance will not be granted unless the evidence of the making of the contract is clear and convincing, and unless its terms, the consideration on which it is founded, and the time of its execution are clearly established." 25 R. C. L. 338.

In our opinion, therefore, the decree of the lower court is erroneous, and it is hereby reversed, with costs.