SORRELLS *et al. v.* ALEXANDER BROS.

(Division A. Nov. 28, 1932.)

[144 So. 560. No. 29964.]

**A. M. Pepper,** of Lexington, **V. B. Montgomery,** of Belzoni, and **Watkins, Watkins & Eager,** of Jackson, for appellants.

Barbour & Henry, of Yazoo City, and **C. M. Murphy,** of Belzoni, for appellees.

Argued orally by **W. H. Watkins, Sr.,** and **V. B. Montgomery,** for appellant, and by **J. F. Barbour,** for appellee.

**Smith, C. J.,** delivered the opinion of the court.

This cause was tried on bill, answers, and a cross-bill, and the appeal is from the decree in accordance with the prayer of the cross-bill. The appellant Sorrells exhibited an original bill against the appellees Alexander Bros., a partnership, and the case presented thereby is, in substance, as follows:.

Sorrells is the owner of a timber tract of land on which the Grenada Bank has a deed of trust. With the approval of the bank, Sorrells entered into a contract to deliver logs to Alexander Bros., who owned and operated a sawmill, and who would saw the logs into lumber and sell it for Sorrells on commission. A large amount of lumber was sawed by Alexander Bros., under this contract, sold by them, and most of the money realized thereby was disposed of by them in accordance with the contract, but a dispute arose between Sorrells and Alexander Bros. as to the sale of lumber remaining in the hands of Alexander Bros., resulting in the filing of the bill of complaint. The prayer of the bill is that the contract be declared at an end, and that an account be stated of the amount due Sorrells by Alexander Bros., and that

a decree be entered therefor, and that a receiver be appointed, to whom Alexander Bros. be directed to turn over the lumber belonging to Sorrells remaining in their hands together with all money received by them from the sale of lumber not theretofore accounted for.

The Grenada Bank was made a party defendant to the bill of complaint and answered, adopting its allegations. Alexander Bros. made their answer a cross-bill, setting up that the contract had been breached by Sorrells, resulting in considerable damage to them, and prayed that they be given a decree therefor, and that the timber which Sorrells was obligated to yet deliver them under the contract be sold for the payment thereof, free from the lien of the Grenada Bank's deed of trust.

The main question presented by the pleadings was whether or not Sorrells had delivered to Alexander Bros. the timber he had contracted so to do, and, if not, whether the contract was breached by Sorrells or Alexander Bros.

The contract, among other things, provides that: "Parties of the second part (Alexander Brothers) agree with party of first part to do custom sawing of logs for party of the first part, . . . and to begin such sawing as soon as party of the first part begins to deliver logs to said mill, and to continue such sawing until all logs have been sawed as delivered by party of the first part from his two certain tracts of timber known as the 'Wasp Lake Tract' and the 'Louise Tract' respectively, both fully described in a contract for cutting and hauling made between said H. A. Sorrells, Jr., and M. W. Moss on November 15th, 1927, to which reference is hereby made for the description. . . . This contract is made in pursuance of a letter from party of second part to the Bank of Belzoni, Belzoni, Mississippi (a branch of the Grenada Bank, mortgagee) offering to saw said lumber, this contract being an acceptance of said offer, which is hereby ratified and confirmed by all parties

hereto, and which said letter is attached to one copy of this contract and is hereby specially referred to and embodied in this contract as a part thereof.''

The Sorrells-Moss contract, referred to in the contract here under consideration, stipulates that ''the party of the first part does hereby employ the said party of the second part to so cut, haul and deliver, as hereinafter specified and provided for, all merchantable timber, of every kind, character and description, measuring fourteen (14) inches in diameter at the small or top end of the logs and larger, now standing, lying or being in any manner situated in and upon those two certain tracts of timbered land, owned by party of first part, in the counties of Sharkey and Humphreys, in the State of Mississippi, the lands upon which is situated being particularly described as follows, to-wit: [First, Louise tract, describing it specifically, and, second, Wasp Lake tract, describing it also specifically.]''

The letter from Alexander Bros. to the Belzoni branch of the Grenada Bank, refered to in the contract, begins as follows: ''With reference to custom sawing lumber for you we submit the following proposition: We agree to take the logs from railroad cars to mill,'' and then, in substance, to saw the same into lumber for a stipulated compensation, and to sell the lumber for a commission of five per cent, plus inspection, handling and loading costs. After some further stipulations, the letter concludes as follows: ''We believe that the above covers the stipulation thoroughly, and we could make this contract to read one to three million feet.''

Approximately three million feet of logs were delivered to Alexander Bros. by Sorrells under this contract, and, if that was all of the logs contemplated by the contract, it was complied with by Sorrells, and nothing remained to be done thereunder, except for Alexander Bros. to account for any logs, lumber, or money received by them under the contract remaining in their hands.

The question thus presented, and on which the parties differ, is whether the stipulation in the letter from Alexander Bros. to the Belzoni Bank branch of the Grenada Bank that "we could make this contract to read one to three million feet" is a part of the contract afterwards entered into by Sorrells and Alexander Bros. and here under consideration. The appellees' contention is that it is not, and that the quantity of logs to be delivered under the contract is governed by the reference therein to the Sorrells-Moss contract; that at most the reference to the Sorrells-Moss contract and to the letter from Alexander Bros. to the Belzoni Bank branch of the Grenada Bank created an ambiguity as to the quantity of logs to be delivered, which could be removed by parol testimony. This seems to have been the view of the court below, for quite a lot of testimony was permitted to be introduced as to what the parties intended by the reference to the quantity of timber in the letter; such testimony being to the effect that the stipulation relative thereto in the letter was intended merely as an estimate. The contract, without the two references therein, contains no stipulation as to the quantity of logs to be delivered, and the reference therein to the Sorrells-Moss contract is expressly "made for the description." The appellees' contention is that the description therein contemplated was intended not only to cover the land from which the logs were to be taken, but also the quantity and character of logs to be delivered. In support of this, they say that, without the Sorrells-Moss contract, there is no stipulation as to the character of logs to be delivered, and that that contract must be resorted to for that purpose, from which it follows that the parties also intended that contract to govern the quantity of logs to be delivered. There is no controversy here as to the quality of logs to be delivered, and we are not, therefore, called on to decide how that question should be determined in event a controversy had arisen relative there-

to. The appellees say further that the statement in the letter of the quantity of logs that could be delivered is merely that the parties could so stipulate if they desired, but that, when they came to make the contract, they did not do this, but referred to the Sorrells-Moss contract therefor.

The whole of the letter was incorporated into the contract thereafter made, resulting in the adoption of all of its stipulations, including the offer therein to make the contract "read one to three million feet," and it seems reasonably clear, in view thereof, that the reference in the contract to the Sorrells-Moss contract was not intended to embrace the words "all merchantable timber." A description of timber does not necessarily, and ordinarily does not of itself alone, include quantity, and an express stipulation, as here, of quantity negatives any intent of the parties to include quantity in the description of the character of the logs and the land from which they were to be cut. While the question may not be without difficulty, it seems reasonably clear that the foregoing views are correct, and that Sorrells had complied with the obligation imposed on him by the contract. With this question out of the way, the court below will have no difficulty in reaching a correct conclusion as to the other matters involved.

Reversed and remanded.