### SMITH v. TAYLOR.
#### No. 6366.

United States Court of Appeals for the District of Columbia.

Argued May 7, 1935.

Decided June 29, 1935.

Rehearing Denied July 22, 1935.

Alvin L. Newmyer, James A. Purcell, and David G. Bress, all of Washington, D. C., for appellant.

Walter B. Guy, Frederic B. Warder, and Louis H. Mann, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

Plaintiff below, appellant here, brought suit in the Supreme Court of the District of Columbia for specific performance of a contract for the purchase and sale of certain stock of a closed corporation.

For a long time prior to January, 1924, the appellant, H. Herbert Smith, and appellee's testator, Robert L. Taylor, as co-partners, conducted in the city of Washington an automobile business under the name of R. L. Taylor Motor Company, appellant owning a one-third interest and Mr. Taylor owning two-thirds.

On or about January 2, 1924, these partners formed a corporation under Delaware law, and transferred thereto their automobile business in exchange for the entire common stock of the corporation; Mr. Smith receiving 300 shares and Mr. Taylor 600.

Six months later, on July 21, 1924, Taylor and Smith made a written agreement which recites in part as follows:

"And whereas it is desired by both parties, as far as may be, to retain the status quo of themselves as former partners, that is to say, that both shall have an equal voice in the conduct of the affairs of the corporation and that both shall draw an equal salary for services and that the division of net earnings shall be divided between them on the basis of their actual holdings of the common capital stock.

"And whereas each of the parties hereto, in pursuance of a verbal contract entered into in years past, that each should prefer the other and give the other certain advantages in the event one should die or withdraw from said business, and in order to protect the remaining or surviving party, as the case may be, from having foisted upon him a party or parties who would not be acceptable to him as a business associate, and in order to give the remaining or surviving party every advantage to enable him to acquire the full and absolute ownership of said business, should he so desire."

Then follow provisions that the stock shall be held by the United States Savings Bank, as custodian, until ordered returned by a written instrument of both parties, "but not by their heirs, personal representatives, or assigns," or until purchased as therein provided; and that the stock should not be hypothecated, sold, or assigned except as arranged for in the contract. Pursuant to this agreement the stock was deposited with the bank, and is now so held.

The contract then provides:

"Second: That the voting power of said stock shall remain with the holders thereof, (except as hereinafter provided), with the provision that the holders, their heirs, personal representatives or assigns, will not at any time so vote the said stock as to injure the other party signatory thereto; nor affect his position in said company; nor affect the equal rate of salary drawn by each; nor do any other act which would be derogatory to the interest of the other. * * *

"Fourth: That in the event of the death of either party the entire holding of said common stock owned by the deceased shall immediately become the property of the survivor (should such survivor so desire), subject to be paid for in manner hereinafter provided. * * *

"Fifth: (bb) Each party shall select one individual, which two shall select a third, all three to be familiar with the values of businesses such as that conducted by the R. L. Taylor Motor Company, and the award or decision as to value of any two shall constitute the value of said goodwill and shall form the basis of settlement in addition to the other items above set forth, less all outstanding obligations of the company. * * *

"Seventh: That in the event of the death of either party the survivor shall have the right if he so elects, to pay for such stock as follows: If the interest of deceased be a one-third interest the survivor shall have five (5) years within which to pay for such stock in monthly instalments and if the interest of the deceased be a two-thirds interest the survivor shall have ten (10) years within which to pay for such stock in monthly instalments, the principal for the entire purchase price to be represented by the promissory collateral note of the survivor, bearing interest at the rate of six per centum per annum, interest on the unpaid principal payable semiannually, the monthly instalments to be equalized so as to mature and pay the entire indebtedness within the five- or ten-year period, as the case may be, such promissory note to have attached thereto as collateral the entire stock sought to be purchased and during the entire time of payment of said note the voting power of the said stock shall rest in the maker of said note, or his personal representatives or assigns, until default made, or the survivor may pay cash in full at his single option. During the period of payment of said note the entire earnings of said stock shall be and remain the property of the maker of said promissory note."

On June 6, 1928, a financial statement of the corporation was prepared under direction of Mr. Smith, or with which he was familiar.

Three days later, on June 9, 1928, Mr. Taylor died, and his widow, the appellee, is legatee of his interest in the corporation, and executrix of his estate.

Commencing in July, 1928, Mr. Smith, or the company, advanced to Mrs. Taylor $800 per month, which payments were continued until April, 1929, when they ceased.

Shortly after Mr. Taylor's death, appellant and appellee began negotiations for the purchase of decedent's stock without appraisement. These negotiations, however, failed, and on December 18, 1928, appellant elected to purchase under the terms of the contract, and through his attorney wrote to appellee's attorney in part as follows:

"He (plaintiff) desires to proceed to the purchase of Mrs. Taylor's common stock by appraisement in conformity with the agreement between him and Mr. Taylor of July 1, 1924. * * *

"Of course it is understood that the advances which have been made to Mrs. Taylor from time to time and heretofore referred to in our correspondence, are to be taken into consideration and credited upon the amount which Mr. Smith will eventually pay to Mrs. Taylor for her common stock."

Thereafter appraisers were selected, but returned no report until October 24, 1930, when they fixed $99.98 as the value of each share of common stock on the date of Mr. Taylor's death.

On November 14, 1930, appellant tendered to appellee his collateral promissory note dated as of the date of the appraisers' report, October 24, 1930, in the principal sum of $59,988.00, payable from date at the rate of $499.90 per month, plus interest thereon at the rate of 6 per cent. per annum, for 120 months, with interest on the unpaid principal from the date of the note at 6 per cent. per annum, payable semiannually.

After some correspondence, this tender was formally rejected on December 18, 1930, because the note did not include interest from Mr. Taylor's death, in June, 1928, until October 24, 1930, when the appraisal was rendered; and because no tender was made of monthly installments of principal or interest which had accrued during that period; and because the note contained no acceleration clause.

No tender other than by this note was ever made, until the bill was filed, when it was repeated.

The $800 monthly advancements made to Mrs. Taylor, when discontinued in April, 1929, were charged against, and deducted from, dividends on the preferred stock of the corporation owned by her, whereby all these advances have been repaid, and cut no figure here.

Until the death of Mr. Taylor, he and the appellant were jointly in control of the business and in active management of its affairs; since that time Mr. Smith has managed the business alone, and no stockholders' meetings have been held, or dividends on the common stock declared.

On January 20, 1932, Mr. Smith filed his bill for specific performance, setting forth the contract, the negotiations between the parties, the tender and refusal thereof, and charging Mrs. Taylor with wrongful insistence upon the payment of installments of principal and interest claim-

ed by her to have accrued from the date of Mr. Taylor's death.

Mrs. Taylor's answer admits her refusal to accept the tender for the reasons previously given.

In a memorandum opinion the trial court held that under paragraph 4 of the contract, appellant by reason of his election became the owner of the stock as of the date of Taylor's death; that he is liable for the payment of installments of principal accruing from that time to date of the appraisers' report, and for installments of principal, with interest, and for interest on the unpaid principal, from the date of appraisers' report; and that the note should not contain an acceleration clause. The court entered a final decree to this effect on June 27, 1934, requiring Mr. Smith to execute and deliver to Mrs. Taylor a collateral promissory note, dated as of June 9, 1928, in the face amount of $59,988, the form of which was set out in the decree, and requiring him to pay contemporaneously with the delivery of the note $48,500.28, being the installments of principal and interest which had accrued on said note up to June 24, 1934.

From this decree both parties noted appeals to this court, but only appellant's appeal was perfected, which presents thirteen assignments of error, whereby he contends: (1) That ownership of the stock did not pass to him until the date of his election to take it, which was December 18, 1928; (2) that until the date of the appraisers' report on October 24, 1930, his indebtedness was unliquidated, and that interest could run only from that date; (3) that under the contract he is entitled to ten years from that date within which to pay for the stock; (4) that appellee's rejection of the tendered note was wrongful, and waived interest thereafter accruing thereon.

While the decree appealed from is in precise accordance with one of the prayers of the plaintiff's bill, he complains that it is based on compromise rather than upon judgment. But decrees for specific performance rest in the grace and discretion of the court, to be granted only upon full consideration of all the rights involved, so that a plaintiff seeking such a decree necessarily submits himself to whatever equitable obligation the court may lay upon him, and such an obligation is not to be minimized or escaped by calling it a compromise. Willard v. Tayloe, 8 Wall. (75 U. S.) 557, 559, 19 L. Ed. 501.

The contentions presented require a construction of the contract, wherein the intent of the parties must, of course, control the conclusion.

When the contract was entered into, the parties obviously intended the appraisal to be made promptly after the contingency which required it, and if that had been done in this case there could be no substantial controversy here now, for it would make little difference whether the payment period ran from the date of death or from date of appraisal.

But as the facts developed, nearly two and a half years elapsed between the two events, during which considerable sums of principal and interest accrued. And since the filing of the suit further sums have become due, the use of which Mr. Smith has enjoyed during the controversy, and all or most of which he always knew he must pay in the end, as he was at all times familiar with the approximate value of the stock.

In accordance with custom in such controversies, each party blames the other for the delay, and the record, as brought here by the appellant, contains nothing by which the blame can be ascertained or measured—not even the important date when the appraisers were appointed. But it does appear that more than a year elapsed between the rejection of Mr. Smith's tender and the filing of his suit.

In this situation nothing can be predicated on the delay, which is the source of the difficulty, and the controversy must be decided on the contract as though no delay had occurred.

Messrs. Taylor and Smith were copartners in the original company, and although Taylor's financial interest in the business was twice as great as Smith's, each had an equal voice in the conduct of its affairs. When the company was incorporated, stock was issued to them on the basis of their respective financial portions in the partnership, but each continued to have an equal voice in the management of the business, and they drew equal salaries therefrom. They were satisfactory to each other as partners, and it was early agreed between them "that each should prefer the other and give the other certain advantages in the event one should die or withdraw from said business," and that the voting power of the stock of each should not be used in any manner "derogatory to

the interest of the other." The contract also provides that upon the death of either, the other shall have an option to buy the stock of the deceased party at a price to be determined by appraisal, the survivor to pay cash, or at his single option to have 5 or 10 years within which to pay by an installment collateral note, the period depending on whether the decedent owned one-third or two-thirds of the stock.

Thus, under the contract, upon the death of Mr. Taylor, Mr. Smith had the right to buy or not as he chose; and if he bought, then to pay in cash or by installments through ten years.

If he elected to buy, the stock became his property as of Mr. Taylor's death, thus preventing any lapse of corporate control or interference with business management.

Mr. Smith's original and continuing purpose to buy is evidenced by his immediate negotiation with Mrs. Taylor, by his abandonment thereof and election to take under the contract, and by his suit to enforce the contract.

And it was reasonable enough to suppose that Mrs. Taylor and Mr. Smith, with aid of counsel and facing a definite problem, could reach a more satisfactory and expeditious conclusion than by following a contract drawn in general terms to meet various contingencies, one of which had then arisen, and especially since an appraisal and financial statement of the property and business had just been made.

But when Mr. Smith abandoned this negotiation, he abandoned all possibility of gain therefrom; and when he resumed his rights under the contract, he resumed them cum onere, including the burden of whatever interest charges, accruals, or shortening of credit period had arisen during his adventure in negotiation. For the mere fact of negotiation between the parties dehors the contract could neither toll the time nor waive the interest which the contract had fixed, unless the terms of their negotiation so provided.

The plaintiff having in this way asserted his rights under the contract as the surviving partner, and having exercised his double option to buy the stock, and to pay for it by note and monthly installments, the whole transaction, we think, must be dealt with as of the date of Mr. Taylor's death.

For while the purpose of the contract is to preserve the business for the surviving partner, and to protect him in the control and management thereof, not only as against outsiders but also as against representatives of the deceased partner, including menacing widows and orphans, yet, if the survivor elects to buy under the contract, the decedent's stock passes to him as of the time of the death, together with the earnings thereof. And since interest is required on deferred payments, the express provision that stock earnings shall immediately enure to the purchaser necessarily implies that interest shall immediately accrue to the seller, as a balancing corollary of the transaction, which contemplates payment to the seller as well as protection to the buyer. And the same considerations apply to the period of appraisal, as to the period of negotiation.

Since it is expressly stated in the contract that upon the exercise of the option to purchase, the ownership of the stock vests in the surviving party as of the date of the death of its owner, we agree with the trial court that the payment period should commence as of the date when title to the stock vests in the purchaser—that is, at Mr. Taylor's death.

This appraisal, which the plaintiff finally brings into court as the basis of his suit, is made as of the date of death, while the plaintiff by one of his prayers requests a construction of the contract requiring his note to run from the date of death in respect of the principal, but from the much later date of appraisal in respect of interest.

This position is based not so much upon any provision of the contract which he asks to have enforced, as upon a contention that until the appraisers returned their appraisal the principal sum payable was not fixed, and until so fixed no interest was payable thereon, or being earned thereby.

We cannot agree with this contention, in the circumstances of this case, as we are of opinion that the right to interest arises from the use of the money, and the provisions of the contract, and does not depend upon the date of an appraisal, or the ascertainment of details of arithmetic, although complete settlement of the accounts could not be made without them.

It is no hardship for one who has had the use of money belonging to another to be required to pay interest thereon from the time when the payment should have been made. Crescent Mining Co. v. Wa-

satch Mining Co., 151 U. S. 317, 14 S. Ct. 348, 38 L. Ed. 177; Spalding v. Mason, 161 U. S. 375, 396, 16 S. Ct. 592, 40 L. Ed. 738.

A recent expression of the Supreme Court on the subject is found in Funkhouser v. Preston Co., 290 U. S. 163, at page 168, 54 S. Ct. 134, 136, 78 L. Ed. 243, where it is said that: "Without attempting to review the numerous, and not harmonious decisions upon the allowance of interest in the case of unliquidated claims, it is sufficient to say that the subject is an appropriate one for legislative action in order to provide a definite rule. The statutory allowance is for the purpose of securing a more adequate compensation by adding an amount commonly viewed as a reasonable measure of the loss sustained through delay in payment. It has been recognized that a distinction, in this respect, simply as between cases of liquidated and unliquidated damages, is not a sound one. Whether the case is of the one class or the other, the injured party has suffered a loss which may be regarded as not fully compensated if he is confined to the amount found to be recoverable as of the time of breach and nothing is added for the delay in obtaining the award of damages. Because of this fact, the rule with respect to unliquidated claims has been in evolution (Faber v. New York [222 N. Y. 255, 118 N. E. 609] supra), and in the absence of legislation the courts have dealt with the question of allowing interest according to their conception of the demands of justice and practicality. Miller v. Robertson, 266 U. S. 243, 258, 45 S. Ct. 73, 69 L. Ed. 265. 'The disinclination to allow interest on claim of uncertain amount seems based on practice rather than theoretical grounds.' Williston on Contracts, vol. 3, § 1413." Prager v. New Jersey, etc., Insurance Co., 245 N. Y. 1, 156 N. E. 76, 52 A. L. R. 193; In re Lindsay's Estate, 210 Pa. 224, 59 A. 1074.

In this respect the appellant's argument relates itself to the ultimate closing of accounts inter partes, while here the question concerns, not a final settlement, but an initial payment, for nothing has been paid on account of this stock since Mr. Taylor's death, more than seven years ago.

During that time Mr. Smith has asserted a right to the stock under his contract, which has prevented any disposition thereof in any other quarter, while he has enjoyed the use of the entire purchase money.

Any hardship, which may appear to exist from now requiring him to pay in cash the considerable accumulations which have arisen pendente lite, could have been obviated by his installment payments within his known value of the stock, or by the periodic creation of a reserve against the known liability, awaiting in detail only the appraisal so long delayed.

In view of his election to buy the stock, and to pay for it by installments under the contract, Mr. Smith should pay by his collateral note dated as of the date of Mr. Taylor's death, with both interest and monthly accruals beginning as of that date.

In our view of the case it is unnecessary to discuss the legal effect of the tender made by Mr. Smith, which we hold was not sufficient under the contract, or the other questions presented by counsel, further than to say that we agree with the learned trial justice that no acceleration clause need be incorporated in the note.

The decree appealed from is therefore affirmed in all respects except fixing the date for the beginning of interest at the date of the return of the appraisal, in which respect it is reversed, and the interest date is fixed as of the time of Mr. Taylor's death

The decree appealed from is affirmed in part and reversed in part, and the cause remanded, with instructions to enter a decree requiring the appellant to pay for the common stock in question by his collateral promissory note as provided for in the contract, dated, and drawing interest from the date of Mr. Taylor's death.