## CROWELL et al. v. GOULD.
### No. 6913.

United States Court of Appeals for the District of Columbia.

Decided March 21, 1938.

Charles V. Imlay and John R. Reed, both of Washington, D. C., for appellants.

George E. Edelin, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and STEPHENS and MILLER, Associate Justices.

MILLER, Associate Justice.

Appellants, appearing jointly, filed a bill seeking specific performance of three agreements, two of which were executed by appellee and appellant Crowell, and the third by appellee and appellant Alderman. One of the former agreements, in turn, incorporated by reference three communications theretofore written by appellee to appellant Crowell, and in terms provided: "this instrument is to be construed in the light of the three communications. * * *" These six writings related to a device called an "Electric-eye project," invented by appellee, and for which an application for a patent was filed in the Patent Office subsequent to the dates of the several instruments which we are asked to construe.

Appellants contend that the various writings, read together, so clearly constitute contracts to assign percentages of right, title and interest in the invented device, and to assign percentages of the proceeds and earnings thereof, as to permit the issuance of a decree for specific performance. Appellee, on the other hand, contends that they constitute agreements merely to assign percentages of the proceeds and earnings to be derived from the exploitation of the invention. Elaborate analysis of the provisions of these six writings is not required to determine that they do not provide a proper basis for the relief sought.

The first five writings must be read together, and in relation to each other, in order to discover the terms of the contract between appellee and appellant Crowell.[1] It will be observed from an examination of the excerpts set forth in the margin[2] that the three communications prepared exclu-

[1] See Fisk Rubber Co. v. Muller, 42 App.D.C. 49; Joy v. St. Louis, 138 U.S. 1, 11 S.Ct. 243, 34 L.Ed. 843; Sorrells v. Alexander Bros., 165 Miss. 466, 144 So. 560; Industrial Commission v. Arizona Power Co., 37 Ariz. 425, 295 P. 305; Espenschied v. Yeager, 278 Ill. App. 508; Cary v. Holt's Executors, 120 Va. 261, 91 S.E. 188; Wallace v. Mertz, 86 Ind.App. 185, 156 N.E. 562; J. I. Case Co. v. Cox, 207 N.C. 759, 178 S.E. 585.

[2](1) The agreement of March 5, 1936, between Gould and Crowell contains the following provisions:

"Whereas it is the intent and meaning of the parties * * * to * * * assign, a certain *portion or interest in a* Photo-electric cell *project,* * * *

"Whereas it is the intent and purpose of * * * Gould, to convey to H. H. Crowell * * * a twenty-five per cent *interest in* and to *all forms of compensation, remuneration, royalties, profits, or dividends,* emanating from the aforementioned 'Electric-eye' project, *of* [sic] *the patents thereunto granted* * * * so that *in the ultimate,* H. H. Crowell, * * * by this conveyance, will have been transferred a twenty-five per cent *interest in the project.* * * *

"Whereas it is the intent and purpose of * * * Gould, to *consolidate into one conveyance* the three communications addressed to H. H. Crowell and dated February 12, 19, and 27, 1936, *which purport to convey a twenty-five per cent*

*interest* in and to the *right, title, and interest,* of *all compensation, remuneration, royalties, dividends, profits, and issues,* now and in the future emanating from the * * * process. * * *

"* * * Now Witnesseth that I, Merle Gould, * * * do hereby bargain, sell, transfer, assign, and convey to H. H. Crowell * * * one fourth, or *twenty-five per cent of the rents, issues, and profits, compensation, royalties, and dividends, arising* * * * *from the use* in any manner whatsoever, *of my* * * * *process* * * * subject to the conditions hereinafter set forth:—

"1. That this instrument is to be construed in the light of the three communications addressed by the said Merle E. Gould to H. H. Crowell * * * and dated February 12th, 19th, and 27th, 1936, copies of which are hereto attached, and hereby requested to be incorporated into this instrument. * * *

* * * * * * *

"4. * * * the *said twenty-five per cent interest* of H. H. Crowell, shall commence to accrue, and *shall be paid over* to him, his heirs, executors, and assigns, *each month,* said monthly payments to be paid within *forty-eight hours of receipt."* (Italics supplied)

(2) The letter of February 12, 1936, contains the following statements:

"Confirming verbal understanding of even date, *I agree to pay you a commission* of 10 per cent upon all revenues received in or for your assistance in help-

sively by appellee and addressed to appellant Crowell, namely, the letters of February 12, 19 and 27, 1936, are clear and unambiguous; they convey no interest in the device itself, but provide solely for the payment of commissions from, and the assignment of interests in, the anticipated proceeds of the invention. The two agreements, on the

ing me obtain introduction, contact, etc., in any or all governmental departments ultimately resulting in the sale of my photoelectric equipment for fingerprint searching *including all rentals* for said equipment, royalty income, *or any basis of remuneration* which I may receive now or in the future during the life of any and/or all contracts pertaining thereto.

"It is understood and agreed that all *said commissions* or monies equalling the above 10 per cent *shall be paid to you* in cash, bank draft, within 24 hrs after receipt of same by me *each and every week or month as the case may be.*" (Italics supplied)

(3) The letter of February 19, 1936, reads as follows:

"Confirming our conversation of today relative to the financing of the Photoelectric cell project we are working on in conjunction with several Governmental Departments, it is my understanding that you will

Advance $30.00 per week, for a period not to exceed four weeks, for the purpose of enabling me to devote my entire time to the endeavor to secure a Governmental installation contract.

"In return for this preliminary financing I hereby agree to convey to you and for your associates, assigns, or heirs a *permanent 10 per cent interest in any and/or all forms of compensation, remuneration, royalties, profits, or dividends* which I may secure as the result of completing the formation of an organization for the conducting of any business developed, or *from the sale, transfer, or assignment of my patents and contracts to any organization or corporation now in business.*

"It is further understood that the first installation which we contemplate, shall, if only in the nature of a partial or test installation, require the return of any and all advances you have made. Upon acceptance by any Governmental Department of *our project for a complete installation,* upon any basis which we may decide, such as rental, and supplies and service, and the permanent form of conducting this business is determined, the aforementioned *10 per cent proportionate interest begins to accrue, and will be paid over to you in cash each month,* said monthly payments to be paid to you within 48 hours *after said income is received by me,* my heirs or assigns for and during the life of my patents, now applied for and any improvements thereon and/or on any new patents that may be issued.

"I therefore hereby agree to formally assign *any and all rights, in my aforesaid patent to you for the period of this agreement, which is until all advances made by you have been repaid* and a permanent form of conducting this business has been established in which *the re-assignment of the aforesaid patents shall become one of the asset items of transfer.*" (Italics supplied)

(4) The letter of Feb. 27, 1936, reads as follows:

"This second letter of agreement to be attached to and made a part of my letter to you of February 19, 1936.

"To wit—

"Whereas it has been found necessary for certain parties to be placed under certain financial committments in the introduction and development of my 'Electric-eye' process for classification and selection of various records, and I hereby agree to *reimburse you for an extra Five (5) per cent commission* to cover above expense. This is a total of *15 per cent total* under my agreement with and to you of Feb. 19, 1936. This does not in any way cancel, alter or affect my former letter to you of Feb. 12, 1936, which is separate and in addition to above outlined commission." (Italics supplied)

(5) The second agreement between Gould and Crowell, dated March 14, 1936, contains the following statements:

"Whereas it is the intent and meaning of the parties whose signatures are hereto subscribed to *convey an additional* Five per cent of the *interest and rights to a certain* 'Electric eye' process, the device or invention of the said Merle E. Gould, to H. H. Crowell, * * and

"Whereas by a certain agreement made in triplicate form on the fifth day of March, 1936, the said Merle E. Gould *has conveyed a twenty-five per cent* interest to said H. H. Crowell,

"Witnesseth that * * * I, Merle E. Gould, do hereby bargain, sell, transfer, assign, and convey, to H. H. Crowell, *five per cent of my device or invention* known as an 'Electric-eye' process * * * *subject to the same terms* as set forth in our agreement of the fifth day of March, 1936, it being the sole intent and purpose of this agreement *to enlarge the interest of H. H. Crowell by five per cent,* so that in the aggregate, he shall enjoy a *thirty per cent interest in said device.*" (Italics supplied)

contrary, are equivocal and uncertain, each containing inconsistent provisions, as well as language ambiguous in itself.

The question which must be decided is whether there was a meeting of the minds of these parties concerning a duty to be performed by appellee, set forth so clearly in their writings as to make possible an order requiring him to perform that specific duty. Considering the five writings of appellee and appellant Crowell, in an effort to determine exactly what they had in mind, the most reasonable conclusion to be drawn from the entire record is that (1) appellee desired to assign an interest solely in the proceeds and profits of his invention; (2) appellant desired to procure an interest in the invention itself; (3) each of the parties tried to express his own point of view; and (4) as a result, there was produced a confusion of thought far removed from that definiteness, certainty, and freedom from ambiguity necessary for a decree of specific performance. Preston v. Preston, 95 U.S. 200, 202, 24 L.Ed. 494; Carr v. Duval, 14 Pet. 77, 10 L.Ed. 361; Repetti v. Maisak, 6 Mackey, 366, 370, 17 D.C. 366, 370; Evans v. Neumann, 51 App.D.C. 300, 278 F. 1013; Cleborne v. Totten, 61 App.D.C. 69, 57 F. 2d 435; Durst v. Jolly, 35 Cal.App. 184, 169 P. 449.

The right to specific performance of a contract is not absolute. A bill seeking such relief is addressed to the conscience of the chancellor and the matter rests within his sound discretion.[3] In order that such relief may be granted it must be shown that the contract in question is free from self-contradiction, and that there is no basis for a reasonable misunderstanding between the parties as to its purport and meaning. Colson v. Thompson, 2 Wheat. 336, 341, 4 L.Ed. 253; Dalzell v. Dueber Watch Case Mfg. Co., 149 U.S. 315, 326, 13 S.Ct. 886, 37 L.Ed. 749; Hennessy v. Woolworth, 128 U.S. 438, 442, 9 S.Ct. 109, 32 L.Ed. 500; Minnesota Tribune Co. v. Associated Press, 8 Cir., 83 F. 350, 357. In fact, there must be such clarity as to the meaning of the contract, and the pleader's right thereunder, that the court can require the specific thing to be done. It cannot substitute a contract of its own making for that of the parties.[4] No such showing has been made here, and, consequently, appellant Crowell is not entitled to the relief prayed for.

Nor is appellant Alderman entitled to such relief. Although the confusion and uncertainty, so marked in the five writings heretofore discussed, is not present in the same degree in the agreement[5] between ap-

[3] Pope Mfg. Co. v. Gormully, 144 U.S. 224, 237, 12 S.Ct. 632, 36 L.Ed. 414; Nickerson v. Nickerson, 127 U.S. 668, 675, 8 S.Ct. 1355, 32 L.Ed. 314; Hennessy v. Woolworth, 128 U.S. 438, 442, 9 S.Ct. 109, 32 L.Ed. 500; Evans v. Neumann, 51 App.D.C. 300, 278 F. 1013; Lenman v. Jones, 33 App.D.C. 7, 27; Smith v. Taylor, 65 App.D.C. 40, 43, 79 F.2d 165, 168; Weeks v. Pratt, 5 Cir., 43 F.2d 53, 56; Barr v. Carnahan, 8 Cir., 34 F.2d 759; Restatement, Contracts (1932) § 359(1).

[4] Hunt v. Rhodes, 1 Pet. 1, 13, 15, 7 L.Ed. 27; American Steel Foundries v. Laughlin, 7 Cir., 30 F.2d 139, 141; Ellis v. Treat, 9 Cir., 236 F. 120; Restatement, Contracts (1932) § 370.

[5] The agreement of April 20, 1936, between Gould and Alderman contains the following statements:

"Whereas it is the intent and purpose of the subscriber, Merle E. Gould, to convey to C. E. Alderman, Esq., * * a thirty per cent interest in and to all forms of compensation, remuneration, royalties, profits or dividends, emanating from a Photo-electric cell process for classification and rapid search or selection in and to all forms of finger-printing, recording, catalogueing [sic] records

of any and all descriptions and/or an improved system of classification as applied to any of the above usages already or to be determined or discovered now or in the future, of [sic] the patents or copyrights thereto when, as and if issued or granted, to-gether with any improvements thereunto added or granted, so that in the ultimate, C. E. Alderman, his heirs, executors and assigns, by this conveyance, will have been transferred a thirty per cent interest in the process, systems, etc., hereinbefore mentioned, as it or they exist at present, together with any and all improvements that may be thereunto added in the future, and

"Whereas the said Merle E. Gould recognizes and acknowledges receipt of $40.00 (Forty Dollars) by way of advancement, and

"Now Witnesseth that I, Merle E. Gould, in consideration of monies advanced, and to be advanced, and other good and legal consideration, receipt of which is hereby acknowledged, do hereby bargain, sell, transfer, assign and convey to C. E. Alderman, * * his heirs, executors, and assigns, Thirty per cent of the rents, issues, profits, compensation, royalties and dividends, arising or emanating from the use in any

pellee and appellant Alderman, when the latter is interpreted in the light of well-recognized principles of construction, it is manifestly nothing more than a contract for the assignment of a portion of the proceeds to be realized from the invention. Where recitals contained in a contract are ambiguous and the operative part is free from doubt, as in the present case, the operative part must prevail. [6]

Appellants seek further to support their prayer for equitable relief by alleging in their bill that appellee "on a number of occasions indicated by oral statements to plaintiffs [appellants] his agreement with them that the true intent and meaning of said three agreements was that defendant [appellee] should assign to plaintiffs a title in the subject-matter * * ; that he likewise so agreed in giving his oral assent to a certain written draft of a modified agreement (one of successive drafts of contemplated new agreements) in a conference on August 6, 1936, between plaintiffs and defendant, and one of plaintiffs' counsel acting as draftsman for plaintiffs and defendant." They also allege that appellee failed to cash a check delivered to him by one of the appellants, although the check "was endorsed by defendant [appellee] in the presence of said plaintiff [appellant Alderman] under a form written on the back of said check stating that it was on said account and was part of the consideration for said 30 per cent interest in said patent application."

Presumably, the purpose of these allegations is to lay a foundation for a decree of specific performance by clarifying the language of the writings by extrinsic evidence. See Preston v. Preston, supra; Repetti v. Maisak, supra; Davis & Roesch Tempera-

ture Controlling Co. v. Tagliabue, 2 Cir., 159 F. 712, 714. It is not necessary for us to decide whether such evidence is admissible for that purpose because, assuming the truth of the allegations referred to, it is nevertheless clear that appellants are not entitled to the relief sought. Far from supporting appellants' position, they add to the uncertainty and ambiguity of the writings themselves, for—while the appellee is alleged to have confided in appellants' counsel an understanding in accord with the position taken by appellants, and although their counsel acted as draftsman—apparently none of the "successive drafts of contemplated new agreements" ever materialized into an executed agreement. Moreover, although appellee, *in the presence of* one of the appellants, endorsed a check under a form—apparently prepared by appellants— which was designed to acknowledge that the check was received in part "consideration for said 30 per cent interest in said patent application," still, appellee was so far from being in accord with appellants upon the subject that, once *out of the presence of* appellants, he preferred to forego the cash rather than allow the endorsed check to get into their possession. Appellee's conduct—as set out in the bill—shortly after the supposed accord and full meeting of the minds on August 6, 1936, in ceasing to deal with appellants, and engaging in a "studied course of evading" them, does not indicate clear understanding and absence of uncertainty.

Appellants also prayed for an injunction pendente lite restraining appellee from transferring or encumbering the invention and the patent application. As they are not entitled to specific performance they are likewise not entitled to an injunction ancillary thereto. [7] No other ground for in-

---

manner whatsoever, of my above described inventions, applications or processes and any improvements that may be added thereto in the future, subject to the conditions hereinafter set forth:—

* * * * * *

"3. When a permanent form of conducting this business is determined by the several parties interested, the said Thirty per cent interest of C. E. Alderman, shall commence to accrue, and shall be paid over to him, his heirs, executors and assigns, in regular installments or dividends when and as determined upon."

[6] Schaffran v. Mt. Vernon-Woodberry Mills, 3 Cir., 70 F.2d 963, 94 A.L.R. 543; Wilson v. Towers, 4 Cir., 55 F.2d

199; Chicago Daily News v. Kohler, 360 Ill. 351, 363, 196 N.E. 445, 451; Williams v. Barkley, 165 N.Y. 48, 58 N. E. 765; Irwin's Bank v. Fletcher Savings & Trust Co., 195 Ind. 669, 145 N. E. 869, 146 N.E. 909; Hansbarger v. Hansbarger, 206 Mich. 281, 172 N.W. 577. See, also, Scott v. Albemarle Horse Show Ass'n, 128 Va. 517, 104 S.E. 842.

[7] Ross v. Union Pacific Ry., 20 Fed. Cas. p. 1245, No. 12,080; Lucas v. Milliken, C.C.S.C., 139 F. 816, 834; Gelston and Meyenberg v. Sigmund, 27 Md. 334; Halstead v. Schnitzpahn, Sup., 152 N.Y.S. 561; Taylor v. Florida East Coast Ry., 54 Fla. 635, 45 So. 574, 16 L.R.A.,N.S., 307, 127 Am.St.Rep.

junctive relief appears in the record. Lewis & Spelling, The Law of Injunctions (1926) §§ 128, 129, 130, 134.

Affirmed.

---

155, 14 Ann.Cas. 472; Hazard v. Hope Land Co., R.I., 69 A. 602, 18 L.R.A.,N. S., 293; Campbell v. Hough, 73 N.J.Eq.

601, 68 A. 759; Roquemore & Hall v. Mitchell Bros., 167 Ala. 475, 52 So. 423, 140 Am.St.Rep. 52.