## AMERICAN SMELTING & REFINING CO. v. HYMAN.

(Circuit Court of Appeals, Sixth Circuit. December 8, 1926.)

No. 4361.

1. **Trial ☞177—On request of both parties for directed verdict, court may determine facts.**

Mutual requests for directed verdict empowered court to determine facts.

2. **Appeal and error ☞997(3)—Facts found by court after mutual requests for directed verdict are conclusive if supported by substantial testimony.**

Court's determination of facts after mutual requests for directed verdict is conclusive, if supported by any substantial testimony.

3. **Appeal and error ☞997(3)—Court's direction of jury verdict after mutual requests, instead of discharging jury, held not to affect conclusiveness of findings.**

That court directed jury to render verdict after mutual requests therefor, instead of discharging jury and itself formally making finding, *held* not to affect conclusiveness of finding.

4. **Sales ☞52(5)—Finding of difference between offer to buy on "basis fifteen cents Louisville" and offer to sell at "fifteen (cents) delivered Louisville" or "f. o. b. Louisville" held sustained by evidence.**

Evidence of difference between offer to buy on "basis fifteen cents Louisville" and agreement to sell at "fifteen (cents) delivered Louisville" or "f. o. b. Louisville" *held* sufficient to sustain trial court's finding that no contract resulted.

5. **Contracts ☞22(1)—Acceptance must correspond to offer at every point and conclude agreement.**

An acceptance, to create a binding contract, must correspond to the offer at every point, and must conclude the agreement.

6. **Contracts ☞28(3)—Acceptance of proposed contract by acquiescence held not established by evidence.**

Acceptance by acquiescence of proposed written contract *held* not established, in view of letter reasonably indicating that promise to accept was conditioned on satisfactory reply to inquiries contained therein.

**7. Sales ⬥52(5)—Binding agreement between defendant's broker and plaintiff held not established.**

Binding contract between defendant's broker, authorized to buy only on "basis fifteen cents Louisville," and plaintiff, whose proposed written contract provided for delivery "f. o. b. Louisville," held not established.

**8. Witnesses ⬥380(6), 400(2)—Plaintiff, calling defendant as witness, may not discredit generally his testimony by proof of contradictory statements, but may introduce counter testimony.**

Plaintiff, calling defendant as a witness, is not at liberty to discredit generally defendant's testimony by evidence of contradictory statements, but has right to rebut or dispute testimony by counter testimony.

**9. Appeal and error ⬥1048(7)—Court's ruling that plaintiff, calling defendant as witness, was bound by his testimony, while too broad, held not reversible error.**

Court's ruling that, if plaintiff called defendant as a witness, it was bound by his testimony, while too broad, held not reversible error, nor did it show that court was conclusively influenced by defendant's testimony in finding facts.

In Error to the District Court of the United States for the Western District of Kentucky; Charles H. Moorman, Judge.

Action by the American Smelting & Refining Company against Louis P. Hyman, doing business as Louis P. Hyman & Co. Judgment for defendant, and plaintiff brings error. Affirmed.

Wm. Marshall Bullitt, of Louisville, Ky. (Leo T. Wolford, of Louisville, Ky., on the brief), for plaintiff in error.

Walter S. Lapp, of Louisville, Ky. (George Du Relle and Charles Ogden, both of Louisville, Ky., on the brief), for defendant in error.

Before DENISON, DONAHUE, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiff, doing business in New York, sued defendant, a dealer in scrap iron and metals, at Louisville, Ky., for failure to accept a quantity of electrolytic copper, which plaintiff alleges defendant contracted to buy from it. The only meritorious question presented here concerns the existence or nonexistence of a completed contract of purchase and sale. At the conclusion of the trial by jury each party requested direction of verdict in its or his favor, apparently without request for special or other instructions. Verdict was directed for defendant. The errors assigned, so far as presented here, relate to (a) the instruction to find for defendant and (b) a ruling in matter of law made on the trial.

[1-3] 1. The mutual requests for directed verdict empowered the court to determine the facts, and such determination of facts necessary to sustain the finding must be accepted by this court, provided it is supported by any substantial testimony. Beuttell v. Magone, 157 U. S. 154, 157, 15 S. Ct. 566, 39 L. Ed. 654; Anderson v. Messenger (C. C. A. 6) 158 F. 250, 253, 85 C. C. A. 468; American Nat. Bank v. Miller (C. C. A. 6) 185 F. 338, 341, 342, 107 C. C. A. 456. Such is the established rule generally, where a jury is waived. Corey v. Atlas (C. C. A. 6) 277 F. 138, 142. The fact that the court directed the jury to render verdict, instead of discharging the jury and itself formally making the finding, does not alter the situation.

2. The contract, if there was one, was effected by correspondence. On October 23 defendant wrote to a New York broker: "Please wire us upon receipt of this letter lowest price at which we can buy 200 tons electrolytic for December delivery, also January, stating terms. We will not make a bid." The broker replied by wire: "Copper market steady. Could probably buy two hundred tons electrolytic fifteen cents f. o. b. refinery January fifteen one-fourth cents asked. Would like bid fifteen cents. Cannot offer firm." On October 26 defendant sent the broker two telegrams, one by Postal, the other by Western Union, the one reading, "For today's acceptance offer two hundred tons electrolytic basis fifteen Louisville"; the other read, "Will take two hundred tons electrolytic December delivery basis fifteen cents Louisville." The same day defendant received from the broker this wire: "Telegram received. Have bought for your account two hundred tons electrolytic December shipment fifteen delivered Louisville. Mailing contract"—and in due course received the broker's letter confirming the latter's telegram of October 26th, and adding: "Contract is being mailed you to-night by the American Smelting & Refining Company."

On November 1st the contract referred to was received. Defendant being out of the city, his clerk wrote, in defendant's name, and by his authority, a letter addressed to plaintiff (but by mistake sent to Cincinnati, Ohio, where there was a company of the same name as plaintiff's but having no connection with plaintiff), saying, "Contract No. 4542 received this a. m. Our Mr. Hyman is out of the city and will not return for a few days, at which time signed contract will be forwarded you. In the meantime please *let us know point of shipment eastern refinery*, and *whether Louisville freight allowance will be*

*made upon diversion of shipment to other points.* Would it be possible to hold this shipment until after December 25th, as our fiscal year ends at that time, and we would not want to include it in our inventory." This proposed draft of contract (No. 4542) made plaintiff agree to sell and deliver and defendant to receive 200 tons of electrolytic copper at *fifteen cents per pound "f. o. b. Louisville, Kentucky,"* "shipment from refinery or ready for shipment and designated to buyer during December." Following other conditions not here important, the sale was declared to be "subject to strikes, fires, floods, wars, delays in or inability to secure transportation by rail or water. * * * Payment to be made in New York Exchange, and if not made in accordance with the terms herein, seller to have the option of cancelling contract."

On November 15th defendant received from plaintiff a letter dated November 10th, as follows: "We do not seem to have received from you signed acceptance of our contract No. 4542, dated October 26th. Will you be kind enough to check this up, and, if your records agree, we would appreciate your mailing same to us promptly." On the next day defendant, by letter written by his clerk, by his direction, replied: "Our Mr. Hyman, who personally signs all contracts of any consequence, is out of the city and is not expected for a few days. In the meantime please reply to our letter of November 1st, copy of which we are sending herewith."

On November 18th plaintiff acknowledged receipt from defendant of copy of the latter's letter of November 1st (which had gone to Cincinnati), and advised defendant of the nonconnection between the two smelting and refining companies. On November 23d defendant, through his clerk, and by his direction, replied to the last-mentioned letter, stating that his letter of November 1st had gone to Cincinnati through error, adding, "Since you now have a copy, will you be *good enough to let us know point of shipment eastern refinery, and whether Louisville freight allowance will be made upon diversion of shipment to other point,"* and repeating a previous enquiry whether the shipment could be held until after December 25th.

On November 26th plaintiff asked defendant to "refer to our favor of the 10th instant and send us by return mail the signed accepted copy of our contract No. 4542, referred to therein." On November 29th defendant wrote, "Not having replied to our several communications, we feel that no contract has been consummated and will act accordingly." On the same day plaintiff wrote defendant:

"It is our intention to ship this copper from our refinery at Tacoma, Washington, and if you will give us shipping instructions, so that we can begin shipments, say December 15th, we believe this will tie in with your request. *So far we have not received your acceptance of this contract,* and will appreciate your sending us one copy with your signature, so that we can complete our files." On December 28th plaintiff wired: "We are able, ready and willing to make due delivery of the two hundred tons of electrolytic copper December shipment sold you under contract of October twenty-six. Please wire shipping instructions"—and on the same day confirmed this wire by letter, adding: "The telegram above speaks for itself, and we are looking forward to receiving your shipping instructions promptly by wire."

Plaintiff contends that direction of verdict for defendant was erroneous for the reasons (a) that there was no difference between the terms of defendant's offer and plaintiff's acceptance thereof, and, consequently, a binding contract between them was effected; (b) defendant accepted the terms of the printed contract sent to him by plaintiff, as shown, first, by his acquiescence in it until the market dropped about the middle of November; and, second, by his express agreement to sign; and (c) the broker was the agent of defendant to make the purchase, and a binding contract was thus made between the broker and plaintiff upon the acceptance of defendant's offer.

[4] We find substantial evidence of meritorious differences between defendant's offer of "basis fifteen cents Louisville" on the one hand, and on the other "fifteen [cents] delivered Louisville," contained in the broker's telegram to defendant, and "f. o. b. Louisville," contained in the written contract tendered by plaintiff through the testimony of at least five witnesses of competency and experience (including the sales manager for the Calumet & Hecla Copper Mining Company, the vice president and manager of the metal sales department of the United States Smelting, etc., Company, as well as defendant). The testimony referred to is to the effect that "delivered Louisville" and "f. o. b. Louisville" mean the same; that "basis Louisville" puts the buyer on an equality with the seller, in that the buyer has a perfect right to divert the shipment to any point, and get the benefit of the prevailing freight rate between the shipping point and destination; that under the words "basis Louisville" the seller has no control over the purchaser diverting the shipments. Under the term "delivered" or "f. o. b. Louisville," the copper cannot be diverted

without the consent of the seller. Defendant testified: "I used the term 'basis Louisville,' instead of 'f. o. b. smelter,' because I didn't know which smelter the copper would be shipped from. It would make a whole lot of difference, if I bought the copper and they shipped it out of New York; I would have fifty opportunities to sell it than if the copper was sent from Tacoma, Washington."

While there was testimony to the contrary, we must accept as conclusive the finding of the trial court, which presumably accords with competent testimony supporting defendant's contention. We find nothing at variance with this conclusion in the cases cited by plaintiff in support of its contention that, as matter of law, the expressions used by plaintiff and defendant respectively amounted to the same thing. Kaw Company v. Purcell Co., 19 Okl. 357, 91 P. 1022, involved the question whether "basis Kaw," used in the offer, and "f. o. b. Burbank," used in the reply (or acceptance), meant the same under the facts and correspondence of that particular case. The question of identity vel non was not disposed of as a matter of law. In Pond Creek Mill, etc., Co. v. Clark (C. C. A.) 270 F. 482, which involved the ultimate question of the place of performance of the contract, and thus the limitation laws of the state governing the suit, it was said: "But none of the evidence * * * of trade custom * * * would indicate that any of these witnesses knew of or that there was extant any general trade custom or practice giving a special meaning to those words, so widely and generally prevailing and recognized that both parties to this contract will be presumed to have dealt in reference to it; neither did it tend to show that there was such a local custom of which both parties to the contract had actual knowledge." We find nothing in that case giving color to plaintiff's proposition of substantial identity, as matter of law, between "basis fifteen cents Louisville," "fifteen cents delivered Louisville," and "f. o. b. Louisville." United States v. Andrews, 207 U. S. 229, 28 S. Ct. 100, 52 L. Ed. 185, and Small v. American Sugar Refining Co., 267 U. S. 233, 45 S. Ct. 295, 69 L. Ed. 589, contain as little applicable to the facts appearing on this review.

From the beginning to the end, defendant insisted that the copper be delivered to him on "basis Louisville." On November 1st, on receipt from plaintiff of the proposed draft of contract, defendant wrote: "Let us know point of shipment eastern refinery, and whether freight allowance will be made upon diversion of shipment to other points." This was repeated, in substance, on November

16th, and yet again on November 23d. We think the situation amply justified defendant's reference in his letter of November 26th to plaintiff's "not having replied," etc. We find no actual reply to these repeated questions.

Nor are we impressed with plaintiff's contention that defendant in his various communications used "various terms interchangeably." True, in his preliminary letter of October 23d he asked merely for quotations for "December delivery," but (so far as relates to the crucial expressions we have been discussing) in his two telegrams of October 26th the terms were substantially identical, viz. "basis fifteen [cents] Louisville" and "[December delivery] basis fifteen cents Louisville." His confirmatory letter of October 26th read: "December delivery basis fifteen [cents] delivery"—the word "Louisville" being omitted.

[5] There was substantial evidence in support of a conclusion that plaintiff never accepted defendant's offer, but impliedly declined so to do. An acceptance, to create a binding contract, must correspond to the offer at every point, and must conclude the agreement. United States v. Construction Co. (C. C. A. 2) 224 F. 859, 138 C. C. A. 449. [6] Of the suggestion that defendant's acceptance of the proposed written contract was effected by his alleged acquiescence in it until the market dropped, we need only say that it was at least open to the court to find that the correspondence negatived such acquiescence. Defendant's asserted promise to sign the contract is obviously predicated on the statement of his clerk in the letter of November 1st hereinabove set out, acknowledging the receipt of plaintiff's proposed written contract. But, treating the letter as written by defendant personally (as he was in communication with his office), the statement "at which time the signed contract will be forwarded you," immediately followed, as it was, by the request, "in the meantime please let us know the point of shipment eastern refinery, and whether Louisville freight allowance will be made upon diversion of shipments to other points," in connection with similar requests in letters of November 16th and November 23d, is reasonably open to an interpretation that the promise was conditioned upon satisfactory reply to the inquiries contained in that letter.

[7] Of the contention that the broker was defendant's agent to make the purchase, and that the broker's agreement with the seller effected a complete contract, it need only be said that defendant's telegraphic offers of

October 26th contained, respectively, the terms "basis fifteen Louisville" and "basis fifteen cents Louisville," thus imposing a limitation on the broker's authority and that the broker testified that he read to plaintiff's representative "word for word" defendant's Western Union telegram of October 26th, and that the representative said he would accept the order on that basis and mail his own contract, also that this representative testified that defendant's offer was for "December delivery basis fifteen cents Louisville," and that the sale was made on those terms.

In explanation of the verbiage in the proposed written contract, he says he thinks the broker asked the price at which plaintiff would sell a certain tonnage of copper for delivery Louisville, and that, as the witness recalled it, a memorandum was sent to him by the contract department, on which there was no mention of the word "basis," and that the witness prepared the printed form in accordance with the memorandum, which called for "delivery Louisville," and put in the contract "f. o. b. Louisville" to carry out the idea of the "memorandum." [1] In view of the testimony presented by defendant as to trade meanings, it was open to the court to find that no binding contract was made between the broker and defendant for the sale of the copper on the terms contained in plaintiff's proposed written draft.

The conclusion we have already announced makes it unnecessary to consider whether a formal written contract would have been necessary to effectuate an agreement otherwise fully reached by correspondence.[2] It may be said that other testimony of plaintiff's representative in the negotiations for the sale would tend to support a conclusion that he considered a formal signed contract necessary to its legal enforceability.

[8, 9] 3. Plaintiff called defendant as its first witness. The record states that "the court ruled that, if the plaintiff called [defendant] as a witness, it was bound by his testimony."

We think that, under the settled rule in this court, plaintiff was not at liberty to discredit generally defendant's testimony by evidence of contradictory statements, but had the right to rebut or dispute the testimony by counter testimony. Murray v. Third Natl. Bank (C. C. A. 6) 234 F. 481, 491, 148 C. C. A. 247; American Issue Co. v. Sloan (C. C. A. 6) 248 F. 251, 253, 254, 160 C. C. A. 329. But while the court's statement in question was too broad, we do not think reversible error was thereby committed. How it came to be made does not appear. After the immediate taking of exception thereto, the matter does not seem to have been again brought up. Defendant's direct testimony related generally to a history of the case, largely made up of correspondence.

The only prominent respect in which there seems to have been a substantial controversy between defendant and other witnesses called by plaintiff pertained to the difference in meaning between "fifteen cents f. o. b. Louisville" and "basis fifteen cents Louisville." Defendant's testimony on that subject was elicited only on cross-examination by his own counsel, not having been referred to on the direct. Plaintiff's course on the trial was apparently unaffected by the ruling referred to. Immediately following the examination of defendant, plaintiff presented the testimony of the broker and of plaintiff's representative upon the facts and merits generally, both these witnesses, as well as a third witness, testifying in accordance with plaintiff's contention as to the commercial interpretation of the words in question—all without objection.

The only prejudice suggested by plaintiff through this ruling is that the erroneous assumption of the binding force of defendant's testimony "conclusively influenced" the court as to the facts in deciding upon defendant's motion for peremptory instruction. We think this inference unsubstantial. Indeed, in view of the history of the trial as set out herein, and the presumption that the District Judge, with his experience in the courts of Kentucky, both as attorney and judge, was familiar with the rule of that court, it would not seem the natural inference that the trial judge rested his conclusion on the theory that plaintiff was bound by defendant's testimony in the sense of accepting it as true.

The judgment of the District Court is affirmed.

---

[1] This witness was of opinion that in this case the last-quoted words gave the buyer the same rights as would the words "December delivery fifteen cents Louisville."

[2] See Corey v. Atlas (C. C. A. 6) 277 F. 138, 142; Jenkins v. Alpena Co. (C. C. A. 6) 147 F. 641, 656 et seq. 77 C. C. A. 625; United States v. Construction Co., 224 F. 859, 862, 138 C. C. A. 449.