**NORTHEASTERN CONST. CO. et al. v. CITY OF WINSTON–SALEM.**

No. 3976.

Circuit Court of Appeals, Fourth Circuit.

April 6, 1936.

Roger O'Donnell, of Washington, D. C. (Thomas W. O'Brien, Lambert O'Donnell, and William J. Peters, all of Washington, D. C., on the brief), for appellants.

Roy L. Deal, of Winston-Salem, N. C. (Fred M. Parrish, of Winston-Salem, N. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an action at law instituted by the appellee, the city of Winston-Salem, a municipal corporation of the state of North Carolina, herein referred to as the plaintiff, against the Northeastern Construction Company, a corporation organized under the laws of the state of New York, herein referred to as the Construction Company, and the United States Guarantee Company, a corporation organized under the laws of the state of New York, herein referred to as the Guarantee Company. The action was originally instituted in the superior court of Forsyth county, N. C., but was removed to the United States District Court for the Middle District of North Carolina and was brought to recover on a bond given by the Construction Company as principal, and the Guarantee Company as surety, in support of a bid or proposal for the construction of a sewer system for the plaintiff. In November, 1934, a jury being waived, the cause was submitted to the judge upon the pleadings, certain stipulated facts, and evidence taken before the court, and in September, 1935, the judge below filed his findings of fact, conclusions of law, and written opinion, and gave judgment for the plaintiff in the full amount of the bond ($12,000), from which action this appeal was brought.

The facts as found by the court below show that the board of aldermen of the city of Winston-Salem, by resolution adopted the 12th day of January, 1934, authorized the commissioner of public works and the public works committee of the board of aldermen to receive until 3 o'clock p. m. February 21, 1934, bids for the construction of an extension of its public sewer system in accordance with specifications and requirements on file in the office of said commissioner of public works; that, after due advertisement, bids were received from four contractors, including the defendant Construction Company, whose bid was the lowest. The bid of the Construction Company was accompanied by a bond of the Guarantee Company, as required by the specifications, in the sum of $12,000. The condition of this obligation was as follows: "That, if the Obligee shall make any award to the Principal for Extension to South-Side Section Sewerage System of the City of Winston-Salem, N. C., according to plans and specifications on file with Commissioner of Public Works of the City of Winston-Salem, N. C., according to the terms of the proposal or bid made by the Principal therefor, and the Principal shall duly make and enter into a contract with the Obligee in accordance with the terms of said proposal or bid and award and shall give bond for the faithful performance thereof with the United States Guarantee Company as Surety, or with other Surety or Sureties approved by the Obligee; or if the Principal shall, in case of failure so to do, pay to the Obligee the damages which the obligee may suffer by reason of such failure, not exceeding the penalty of this bond, then this obligation shall be null and void; otherwise it shall be and remain in full force and effect."

This bond accompanying the bid of the Construction Company was in lieu of a cash deposit or certified check as was required by the North Carolina Statutes.

On March 9, 1934, the board of aldermen adopted a resolution accepting the proposition (bid) of the Construction Company, but, as stated in the resolution, eliminated from the contract about 20,000 feet of sewer lines that were included in the original advertisement for bids. This resolution stated that this exclusion of a part of the work was done upon the recommendation of the public works committee of the board. On March 10, 1934, the secretary of the board addressed a letter to the bidder giving notice of this action. The Construction Company under date of March 19, 1934, sent a letter,

signed by its president, to the secretary of the board stating that it was considered by the Construction Company that this elimination of 20,000 feet of sewer lines from the proposal, as originally advertised, cutting down the project to about 85 per cent. of the whole, constituted a substantial change or departure from the original terms, that such a change amounted to a rejection of the offer, and that the Construction Company did not care to accept the proposal as changed and was not prepared to renew its original offer.

On March 20, 1934, the board of aldermen passed a resolution setting out that, as the Construction Company had attempted to withdraw its bid by letter of March 9, 1934, before the award was made, but after its officers had knowledge of the fact that it was the low bidder, without giving any reason for such attempted withdrawal, and as the Construction Company had by letter of March 19 refused to comply with the terms of its proposal or execute the contract, therefore the bond accompanying the bid signed by the Guarantee Company be forfeited and that proper steps be taken to secure payment of the same. A copy of this resolution was forwarded to each of the defendants, by the city attorney, under date of May 2, 1934.

On March 21, 1934, the plaintiff caused to be prepared a formal contract in accordance with the terms of its resolution of March 9, 1934, and duly tendered said contract to the Construction Company, which company refused to execute same. The vice president of the Construction Company represented it in submitting the bid in question and was present when the bids were opened, and was then informed by the city manager of public works that a part of the work would be eliminated on account of lack of funds.

During the period between February 21 and March 9, 1934, the city manager of public works and the vice president of the Construction Company had several conferences, in the course of which the vice president of the Construction Company indicated a desire to withdraw his bid. On March 2, 1934, the board of aldermen, being informed that the Construction Company desired to cancel its bid, delayed action for one week in an effort to get the matter adjusted.

After the Construction Company refused to execute the contract, the plaintiff relet the work to the lowest bidder, and the cost to the city was approximately $25,000 more than the Construction Company's bid.

The court found as a fact that the change in the proposal as made by the city did not materially alter its terms, and reached the conclusion, as a matter of law, that the acceptance of the bid by the plaintiff (eliminating a portion of the work) made the contract complete and that the refusal of the Construction Company to enter into its performance was a breach that entitled the plaintiff to the penalty of the bond which, in amount, was less than the damages the city sustained by reason of the breach; that the clause in the specifications accompanying the advertisement for the bids, giving the commissioner of public works the right to eliminate any portion of the work, coupled with the fact that the work was to be paid for by the unit of work, authorized the elimination of a part of the proposal by the plaintiff without materially altering the proposal, and did not therefore justify or excuse the Construction Company for its refusal to carry out the contract.

The sole question necessary to be considered upon this appeal is whether the alteration made by the board of aldermen of the plaintiff after the bids had been opened, in the amount of work to be contracted, was such a material alteration, in the terms of the proposal, as justified the Construction Company in refusing to carry out the contract. We think it was, and are of the opinion that the court below was in error in holding that the elimination of a part of the work as made by the board of aldermen did not materially alter the terms of the proposal. Certainly the elimination of approximately 15 per cent. of the total work as advertised to be let is a material variation, and it follows that the minds of the parties never met on the contract. It is not necessary to cite authorities to the effect that there must be a meeting of the minds to make a valid contract. The Supreme Court of the United States in the case of Eliason et al. v. Henshaw, 4 Wheat. 225, 228, 4 L.Ed. 556, early laid down the rule as follows: "It is an undeniable principle of the law of contracts, that an offer of a bargain by one person to another, imposes no obligation upon the former, until it is accepted by the latter, according to the terms in which the offer

was made. Any qualification of, or departure from, those terms, invalidates the offer, unless the same be agreed to by the person who made it. Until the terms of the agreement have received the assent of both parties, the negotiation is open, and imposes no obligation upon either."

This rule, to which we know no exception, has been repeatedly restated and affirmed by the courts. Carr v. Duval, 14 Pet. 77, 10 L.Ed. 361; Tilley v. Chicago, 103 U.S. 155, 26 L.Ed. 374; Minneapolis, etc., v. Columbus Rolling Mill Co., 119 U.S. 149, 7 S.Ct. 168, 30 L.Ed. 376.

This rule likewise applies to solicitation of bids by governmental agencies. In the case of Iselin v. United States, 271 U.S. 136, 46 S.Ct. 458, 459, 70 L.Ed. 872, the court said: "It is well settled that a proposal to accept, or an acceptance upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested." See, also, United States v. P. J. Carlin Construction Company et al. (C.C.A.) 224 F. 859; Doyle v. Hamilton Fish Corporation (C.C.A.) 234 F. 47; Ohio & Michigan Coal Co. v. Clarkson Coal & Dock Co. (C.C.A.) 266 F. 189; Detroit Copper & Brass Rolling Mills v. Wise et al. (C.C.A.) 297 F. 460; Columbia Malting Company v. Clausen-Flanagan Corporation (C.C.A.) 3 F.(2d) 547; American Smelting & Refining Co. v. Hyman (C.C.A.) 16 F.(2d) 39; Cosden et al. v. Cline et al. (C.C.A.) 26 F.(2d) 631; Cleborne v. Totten, 61 App.D.C. 69, 57 F.(2d) 435.

The same rule obtains in the state of North Carolina. Watters v. Hedgpeth, 172 N.C. 310, 90 S.E. 314; Cozart v. Herndon, 114 N.C. 252, 19 S.E. 158; Bank v. Miller, 106 N.C. 347, 11 S.E. 321; Spruill v. Trader, 50 N.C. 39; Standard Sand & Gravel Co. v. McClay, 191 N.C. 313, 131 S.E. 754.

Here the plaintiff advertised for bids for certain work, stating, "The entire work is to be let in one contract." Bids were submitted, and, after they were opened, the plaintiff, through its board of aldermen, said they would accept the bid of the Construction Company but for only 85 per cent. of the work and not all of it. The Construction Company at once replied that it had not bid on 85 per cent. but on the whole, as advertised, and would not enter into any contract for the proposal as changed. The Guarantee Company guaranteed that the Construction Company would carry out its bid for the entire work, not for a portion of it, and could not be held on its bond for different bid than that which it guaranteed, without its assent to the change. It does not in the least alter the fact that the minds of none of the parties ever met to say that the change would not injuriously affect the Construction Company. It cannot be gainsaid that it was a material change and no proposal or acceptance can be materially changed, by either party, without the assent of all the parties.

The judge below based his findings upon a clause in the specifications accompanying the advertisement for the bids giving the commissioner of public works the power, at any time, to make changes in the specifications as to the work and make variations in the quantity of the work either before the commencement of the work or during its progress. A study of this provision shows that it is the provision usual and necessary in all contracts of this character, giving the engineer in charge of the work control of it, but it certainly does not give the engineer any power over the transaction until a binding contract is executed and entered into, and in no sense gives him any power or authority as a contracting party.

The record shows that, even if the commissioner of public works did have the right, under the advertisement for bids, to change the amount of work to be let to contract, the action of the board of aldermen was not taken upon the recommendation of the commissioner, but upon the recommendation of the public works committee of the board. The commissioner of public works under the laws of the state of North Carolina could not make or enter into any agreement that would be binding upon the municipality. Chapter 24, article 5A, section 1316 (a) et seq., Code of North Carolina 1935.

In his opinion the judge below found that the vice president of the Construction Company "assented to the arrangement before the bid was accepted," but a painstaking search of the record discloses no evidence upon which such a finding could be based, and the resolution passed by the board of aldermen on March 9, 1934, explicitly states that the Con-

struction Company, by letter dated March 8, 1934, and before the formal acceptance of the bid on March 9th, had given formal notice in writing of its desire to withdraw its proposal.

■ The weight of authority is to the effect that bids of this nature are irrevocable and cannot be withdrawn, especially after the opening of the bids. Note in L.R.A.1915A, 225. Had the plaintiff accepted the Construction Company's bid without material change, the defendants here would be liable—but such is not the fact. As authority for his holding, the trial judge relied upon a decision of this court in the case of Corporation of Charles Town v. Ligon, 67 F.(2d) 238, but the facts in the Ligon Case show that that decision is not controlling. There the contract had been entered into and the clause giving the engineer control of the work and authority to make changes had been agreed to by the contractor. Here, as we have stated, there never was a contract.

■■ It is contended on behalf of the Construction Company and the Guarantee Company that the bond sued upon had no legal standing as such because the laws of the state of North Carolina required, instead of a bond, that a deposit of cash or a certified check should accompany the bid. Section 1316 (a), chapter 24, article 5A, of the Code of North Carolina. But we think the judge below was right in holding that the fact that a bond was proffered and accepted for a greater amount than that fixed by the statute, instead of a cash deposit or a certified check, cannot be set up by the Construction Company as invalidating the bond. The Construction Company would necessarily be estopped from taking advantage of its voluntary action under these circumstances. The fact that the city re-quired a deposit in excess of the amount required by statute is immaterial. Del Balso Construction Corp. v. Gillespie, 225 App.Div. 42, 232 N.Y.S. 261.

A question similar in principle to the one here was discussed in a decision of this court in the case of Maryland Casualty Co. v. City of South Norfolk, 54 F.(2d) 1032, 1036, where Judge Parker said that provisions of the character of the one here under discussion could not be construed as "contemplating that an entirely new and independent project might be brought under the terms and guaranty of the original contract, without notice to the surety."

It is further contended on behalf of the plaintiff that the questions of the sufficiency of the evidence to sustain the findings of the court below were not properly reserved by appropriate exceptions offered during the trial, but we are of the opinion that the defendants sufficiently protected these points. A number of contentions are made by the plaintiff which, in view of our conclusion that there was no binding contract, it is not necessary to discuss here.

The plaintiff advertised for bids on a project as a whole, and bids were submitted upon this basis; without the consent of the bidder or its surety, the proposal was materially changed before the bid of the Construction Company was accepted; neither the bidder nor its surety consented to the change, and there was no meeting of minds on the contract; there was no authority on the part of the city manager of public works to make the contract or direct any change until after a contract was entered into; and the holding of the court below that there was a binding contract was, under the admitted facts in the case, erroneous.

The judgment of the court below is accordingly reversed.