## HILLCREST INV. CO. v. UNITED STATES.

### No. 351.

District Court, W. D. Missouri, S. D.

April 15, 1944.

Mann & Mann, of Springfield, Mo., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., Department of Justice, and Otto Schmid, Asst. U. S. Atty., of Kansas City, Mo., for defendant.

REEVES, District Judge.

This is an action against the government for the recovery of $3,314.42 with interest at 6% from July 31, 1940. The plaintiff seeks a refund of that sum on the ground that it was illegally assessed by the Commissioner of Internal Revenue for the year 1937.

Said tax was assessed as the undistributed profit tax upon the adjusted net income of the plaintiff determined to be $19,175.16. The commissioner fixed the assessment upon the theory that the net income named could have been lawfully distributed to the stockholders of plaintiff for said year 1937 but was not. It is the contention of the plaintiff that, as provided by the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 819 et seq. the plaintiff was under a contract restricting the payment of dividends and that said contract was in writing and was in force on May 1, 1936, as provided by

said act as the basis or a ground for exemption.

The only question, therefore, for decision is whether the plaintiff was in fact under the restriction of a contract in writing "expressly" dealing with the payment of dividends and forbidding their payment.

The parties have agreed on the facts. Essential facts for a decision are as follows: The plaintiff is a Missouri corporation located at Springfield, Missouri and was doing business on June 20, 1935. Shortly prior to that date it made verbal application to the Southern Missouri Trust Company, a banking corporation of Springfield, Missouri, for a loan of $25,250. The bank agreed to make the loan "upon condition that plaintiff, by resolution of its Board of Directors, agree that until said loan and all renewals thereof were fully paid and discharged that the Company would pay no dividends and would distribute to its stockholders no part of the earnings of the corporation, and that certain assets of the corporation be pledged to secure the repayment of said loan."

Pursuant to this suggestion or proposal, and on the said June 20, 1935, "at a lawful meeting of the Board of Directors of the plaintiff held at the office of the Company on June 20, 1935, the Board of Directors unanimously adopted and spread upon the minutes of said meeting a resolution reading as follows:

" 'Be it resolved that the President, A. J. Eisenmayer, Jr., acting with the Secretary, W. C. Eisenmayer, of the Hillcrest Investment Company, be and are hereby authorized to borrow money from The Southern Missouri Trust Company of Springfield, Missouri, from time to time, not exceeding $26,750.00 at any one time on such terms as said acting officer or officers may approve; and such acting officer or officers are hereby authorized to execute and deliver to the Southern Missouri Trust Company of Springfield, Missouri, the obligation or obligations of this Company for the same; and are further authorized to pledge out of the monthly rentals from the Hotel Ozarks the sum of $1,000.00 per month to be applied as part payment monthly on the amount or amounts borrowed from the Southern Missouri Trust Company. When obligation or obligations mature said officers or officer are authorized to renew said loans in part or in full until paid.

" 'As a consideration for the Southern Missouri Trust Company, Springfield, Missouri, granting the above mentioned loan, and in order to comply with their demand, it was unanimously agreed by the Board of Directors of the Hillcrest Investment Company that no dividend would be paid to the stockholders of the Hillcrest Investment Company until the above mentioned loan be paid in full.

" 'This resolution shall be in force and good until rescinded and notice of rescission given in writing to the Southern Missouri Trust Company.'

"Thereafter, towit, on June 22, 1935, a "full copy of the minutes of the meeting of said Board of Directors of June 20, 1935, which included the foregoing resolution duly certified by the signatures of the President and Secretary of plaintiff Company was delivered by plaintiff to The Southern Missouri Trust Company, which accepted said resolution in the manner and form above set forth without objection, and thereupon and on said date and in reliance upon said resolution as so certified, the Southern Missouri Trust Company loaned to plaintiff the sum of $25,250.00 upon its promissory note of that date and bearing said Trust Company's loan No. 6057, which note was made payable December 18, 1935, and the certified copy of the minutes of the Board of Directors of plaintiff company was retained by The Southern Missouri Trust Company attached to the promissory note of plaintiff and it remained in the note case with said promissory note and the subsequent renewals thereof until said indebtedness was fully paid."

The loan was renewed from time to time, and, "on December 31, 1937, there remained unpaid $17,250.00 of said original indebtedness of $25,250.00."

It is unnecessary to state other facts for the reason that no issue is made but that plaintiff was acting within the scope of its charter powers and that it has preserved every right belonging to it both in meeting the demands of the Commissioner of Internal Revenue and thereafter seasonably propounding its claim for a refund.

As indicated, the issue is simple. The legal question arising on the admitted facts is whether the contract or the arrangement above noted became and was such a contract as entitled the plaintiff to an exemption from the payment of the said tax on its undistributed profits.

■ 1. As postulates to a determination of the question presented the following

fundamentals of the law with respect to private corporations and their contracts should be noticed:

(a) It is the rule of universal acceptance that a Board of Directors is the governing body of a private corporation and subject to unimportant limitations may exercise all the powers vested in the corporation. The courts do not treat such powers as delegated but rather as original and inhering in the board.

"* * * the powers of the board of directors are, in a very important sense, original and undelegated, * * *." 19 C.J.S., Corporations, p. 82 § 742.

This is the rule in the State of Missouri, Federal Land Bank v. Bross, 122 S.W.2d 35, loc.cit. 39, where the St. Louis Court of Appeals said:

"Moreover it is to be borne in mind that while a corporation may conduct its business through its president and other officers who are the agents of the corporation, the ultimate source of all authority lies in the board of directors who stand in the place of and for the individual stockholders, and in the sense of the control they exercise over corporate affairs may be said to actually constitute the corporation."

The rule thus announced was gleaned from Grafeman Dairy Co. v. Northwestern Bank, 290 Mo. 311, loc.cit. 331, 235 S.W. 435, 441, where, in substance, the identical principle was announced. See also In re Lone Star Shipbuilding Co., 2 Cir., 6 F.2d 192, loc.cit. 195.

■ (b) It should also be accepted as an accurate statement of the law that corporate contracts are entered into and become binding precisely as in the case of individuals insofar as the formality of the contract is concerned.

19 C.J.S., Corporations, § 1134, p. 703, where it is said:

"* * * a corporation, in the absence of a statutory or charter provision to the contrary, ordinarily need observe only such formal requirements in the execution of its contracts as are binding on individuals under similar circumstances."

■ (c) It will be readily conceded that another important rule prevails in the law of contracts: While there must be a meeting of minds to make a valid contract if and when an offer is made and there is an acceptance according to the terms of the offer a binding contract becomes effective. Northeastern Const. Co. v. City of Winston-Salem, 4 Cir., 83 F.2d 57, 104 A.L.R. 1142. In the latter case, 83 F.2d loc.cit. 59, the court quoted approvingly from an early case (Eliason et al. v. Henshaw, 4 Wheat. 225, 228, 4 L.Ed. 556) decided by the Supreme Court of the United States, as follows:

" 'It is an undeniable principle of the law of contracts, that an offer of a bargain by one person to another, imposes no obligation upon the former, until it is accepted by the latter, according to the terms in which the offer was made.' "

■ (d) Even a signature to a written contract is not requisite to its binding effect. In Commercial Standard Ins. Co. v. Garrett, 70 F.2d 969, loc.cit. 974, the Court of Appeals, Tenth Circuit, said on this subject:

"Ordinarily the purpose of a signature to a written contract is to show consent to be bound thereby. It is the customary way of manifesting assent to a written instrument. But where a signature is not required by statute or by express provision of the agreement, assent may be shown in other ways."

There is a wealth of authority supporting this principle.

■ 2. Applying the foregoing principle to the admitted facts: The plaintiff in carrying on its business sought to borrow $25,250 from The Southern Missouri Trust Company of Springfield, Missouri. The bank was willing to make a loan to the plaintiff of that sum of money only upon the express condition that, until the debt was discharged, "no dividends would be paid to the stockholders." The plaintiff met the terms of the bank. It did not authorize an agent, as it might have done, to contract with the bank but the board of directors, possessing full and unquestioned authority, formally, on behalf of the corporation, adopted a resolution dealing expressly with the question of dividends and presented to the bank, through its president and secretary, the resolution exacted by the bank as a condition precedent for the loan. The minutes of the board were properly signed. It was the exercise of an original and undelegated authority by the board of directors. The act of the board possessed a significance and a solemnity even beyond that of a mere agent. Conformable to the resolution and as an acceptance of its proposal the bank granted the loan. In doing so, it attached to the note the resolution of

the board of directors, which, to a limited extent, constituted collateral to its loan.

In enacting the law the Congress could not have had in mind a contract in writing more certainly and "expressly" dealing with the payment of dividends. It was a solemn undertaking in writing, expressly covering the subject of dividends and was perfectly binding upon the plaintiff. It restricted the payment of dividends.

The Court of Appeals, Second Circuit, in the case of Monarch Theatres v. Helvering, 137 F.2d 588, 590, had before it similar facts although the obligations of the taxpayer were not as clearly fixed as in the instant case. In that case the judges were not in agreement on certain phases of the case, but as to principles applicable here, they were in perfect accord. In both the majority and minority opinions the court said:

"On the other hand, if the resolution and its appurtenant writings do contain all the terms of a contract within § 26(c) (1), [26 U.S.C.A. Int.Rev.Acts, page 836], we hold that the mere fact that it is in the form of a resolution is not material. The passage of a resolution is as good an 'execution' of a contract, as to have the officers sign and seal it. * * * Indeed, it is the exercise of a more direct authority, since it is the act of the directors themselves."

In the dissenting opinion, 137 F.2d loc. cit. 591, the court said:

"In other words, the corporation made an offer which was accepted by Katz, the latter furnishing the consideration of forbearance to demand immediate payment of his claim. This, I think, amounted to a contract which was reduced to writing and executed by the board of directors and was binding on the corporation in respect to the provision limiting the power to declare dividends. The agreement between the corporation and its creditor was executed with at least the formality required by the statute and to me it seems plain that Congress never intended the deduction to be unavailable to corporations situated as this one was."

3. Counsel for the government rely upon the opinion of the Supreme Court in Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 61 S.Ct. 109, 112, 85 L.Ed. 29. In that case the court was considering whether the taxpayer could claim an exemption from a surtax on its undistributed profits because forbidden to make such distribution by state statute. In reviewing the history of the enactment the court pointed out that that identical question had been before the Congress but had been eliminated from the bill as finally passed. The court held properly that a statute forbidding the distribution of dividends was not the equivalent of a contract by the corporation, as in this case. There was no occasion for the court in deciding that case to set out requisite formalities of a written contract which "expressly deals with the payment of dividends."

The Court of Appeals, in Monarch Theatres v. Helvering, supra, 137 F.2d loc.cit. 590, animadverted to and commented upon the opinion in the Northwest Steel Mills case, as follows:

"The often quoted language of Mr. Justice Black in Helvering v. Northwest Steel Rolling Mills, supra, 311 U.S. 46, 49, 61 S. Ct. 109, 85 L.Ed. 29 was used discursively and by way of example; it is not to be understood as laying down absolute doctrine."

Counsel also cite the opinion of the Court of Appeals, 8th Circuit, in Mastin Realty & Min. Co. v. Commissioner of Int. Rev., 130 F.2d 1003, 1006. The facts in that case are far different from the facts here being considered. Resolution of the board of directors was made after the debt was contracted. No reference was made to any particular creditor. The resolution was rather expressive of a policy agreed upon by the directors than one contractual in its nature with any individual creditor. Even in that case the Court of Appeals conceded, with respect to a procedure as in this case:

"Confessedly, less formal methods of execution of a contract by a corporation may still be construed to be the contract of a corporation. We are here, however, considering a prohibition in the tax law authorizing specific exemption, and the question is whether the resolution adopted by petitioner may, in connection with the letter from its president, be considered a written contract executed by the corporation within the meaning of Section 26(c) (1) of the Revenue Act of 1936 [26 U.S.C.A. Int.Rev. Acts, page 836]."

Later in the opinion the court said that "the resolution here considered might have been sufficient authority for the officers of the company to enter into such a contract."

In the case of Metal Specialty Co. v. Commissioner of Internal Revenue, 128 F. 2d 259, the Sixth Circuit Court of Appeals,

while properly holding that the action taken by the board of directors in that case was not contractual in its nature, yet the court said, with respect to the exemption of Section 26(c) (1) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 836, that it "had reference to an agreement of the conventional type which is reduced to writing, signed and delivered to the party entitled to enforce it * * *." The use of the expression "conventional type" means according to custom or practice, and, as indicated in the forepart of this opinion, custom or practice does not require that a contract in writing be actually signed by the parties. By this last comment, however, there is intended no implication that the contract in this case was not actually signed by the obligated party. When the board of directors adopted its resolution and spread same upon its records, incorporating it in its minutes, it then became in every respect, after acceptance by the bank, a contract in writing signed by the parties.

The case of Hobbs-Western Co. v. Commissioner of Internal Revenue, 8 Cir., 133 F.2d 165, is not contrary to the views herein expressed. In that case the collateral agreement which related to the matter of paying dividends did not wholly restrict their payment. Other cases cited by defendant have been examined. They are not contrary to the views here expressed.

Accordingly, the plaintiff is entitled to judgment as prayed in its complaint.