**NOLAN BROTHERS, Incorporated,**
**Appellant,**

v.

**CENTURY SPRINKLER CORPORA-**
**TION, Appellee.**

No. 6942.

United States Court of Appeals,
Fourth Circuit.

Argued March 15, 1955.

Decided April 1, 1955.

R. Harvey Chappell, Jr., Richmond, Va. (Christian, Barton, Parker & Boyd, Richmond, Va., on brief), for appellant.

E. Ballard Baker, Richmond, Va. (Wicker, Baker & Shuford Richmond Va., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from an order of the United States District Court for the Eastern District of Virginia granting the motion of Century Sprinkler Corporation (hereinafter called Century) for summary judgment in an action for damages for breach of contract brought against Century by Nolan Brothers, In-

corporated, (hereinafter called Nolan). This appeal by Nolan presents but one question: did Nolan and Century enter into a contract. We hold that they did not, and the judgment of the District Court is affirmed.

The facts of the case are contained in the correspondence between Nolan and Century, which was attached as an exhibit to Century's motion for summary judgment. On March 3, 1952, Century, a Virginia corporation engaged in the business of installing sprinkler systems, wrote to Nolan, a Minnesota corporation, in part as follows:

"Re: Sprinkler system installation
Base Warehouse,
Connally AFB,
Waco, Texas
ENG–41–443–52–22

"Gentlemen:

"We have reviewed Government plans, specifications and addendums applicable to the above, and are pleased to quote for prompt acceptance, all in accordance with the terms and conditions of our standard form of proposal (this form being the same as that used by all sprinkler companies nationally), as follows:

"We propose to furnish the necessary materials, tools and labor on the premises, handling the sprinkler system installation in accordance with Government plans and specifications, except as hereinafter noted, all for the total cash sum of $19,896.00.

\*　\*　\*　\*　\*　\*

"Should the above prove of interest to you, it would be our pleasure to discuss this matter further with you, at your convenience."

On March 11, 1952, Nolan acknowledged receipt of this letter, stating that it would write further after receipt of official notification that it had been awarded the contract. On March 15, 1952, Nolan wrote to Century in part as follows:

"To comply with the Government specifications we will be required within five (5) days after awarding of the contract to present a complete work schedule to the Contracting Officer. Therefore, we request that you supply us now with a statement of work progress. A tentative written schedule to include at what phase in our work yours will begin and the amount of time required by you for completion."

These two letters were answered by Century on March 26, 1952, and, after referring to Nolan's two previous letters, Century stated:

"We assume from all of the above that you are to award us contract in accordance with our bid of 3 March? However to date this has not been forthcoming and you can appreciate that we can take no further action in this matter until some kind of 'formal order' is received from you."

On April 8, 1952, Nolan wrote Century in part as follows:

"We have been awarded the contract for the construction of the base warehouse at James Connally Air Force Base, Waco, Texas.

"We accept your quotation in good faith; however, we must ask that you mail us a tentative schedule of work in order that we may make up the sub-contract which will constitute formal acceptance and agreement."

Century wrote Nolan on April 14, 1952, in part as follows:

"Receipt is acknowledged of your letter 8 April 1952 in which you advise you are accepting our quotation of 3 March 1952 covering the above, and we wish to thank you for this order.

\*　\*　\*　\*　\*　\*

"Our quotation of 3 March was based upon the terms and conditions of our standard form of proposal. Therefore, we are appending hereto, our customary form of proposal, in triplicate, and would appreciate your

promptly executing and returning two copies of the same via Air Mail. Promptly upon receipt of the executed contract, we will then start our working drawings, assembling of materials, etc., and forward completed working drawings to you for approval by the Corps of Engineers, U. S. Army as early as possible."

And on April 17, 1952, Century wrote Nolan:

"Referring further to our letter of 14 April pertaining to the above, we today received Government plans and specifications which you forwarded us.

"At the time we figured this work, all we had was the Government plan and specifications covering the sprinkler system installation and the said plans indicated 1180 sprinklers. In fact our standard form of proposal forwarded with our 14 April letter indicates this number of sprinklers, with a 'pro-rata price' of $10.00 each for 'more or less' than the number mentioned.

"We now note a stamp on the plans which you furnished us reading, 'Revised and issued by the Office of the District Engineer, Fort Worth, Texas.' Further, a check of these plans now indicate that a total of 1554 sprinklers are required, or 378 sprinklers more than our original figure of 1180 sprinklers.

"In accordance with our proposal, which you are to execute and return to us, we will furnish and install the additional sprinklers mentioned above, at the 'pro-rata figure of $10.-00 each.' "

On April 26, 1952, Nolan wrote Century:

"I have reviewed the correspondence passing between our firms relative to the above matter. The form of proposal submitted by you varies from your original offer, which we accepted. We entered into a binding commitment with the Government based upon your offer. Necessarily

we will expect you to carry through as agreed."

Century refused to install the sprinkler system, and Nolan let the contract to another firm at an increase in cost of $4,429.00 above the figure quoted in Century's letter of March 3, 1952. Nolan brought the present action, claiming damages of $4,429.00.

█ It is an elementary principle of contract law that acceptance of an offer must be unequivocal and unqualified in order to bind the offerer and result in a valid contract. No contract comes into being if the offeree's acceptance is not as broad as the offer. See Northeastern Construction Co. v. City of Winston-Salem, 4 Cir., 83 F.2d 57, 104 A.L.R. 1142; 1 Williston, Contracts § 73 (Rev. Ed.).

█ In the present case it is apparent that Nolan never accepted any offer made by Century. Century, in its letter of March 3, offered to install a sprinkler system at a stated price, "all in accordance with the terms and conditions of our standard form of proposal." Nolan's letter of April 8, which it contends is an acceptance of Century's offer, made two qualifications of Century's offer: (1) Nolan was to draw up the contract between the parties; and (2) the work schedule was to be made a part of such contract. This is not such an acceptance as would ripen Century's offer into a contract. Nolan has attempted to divide Century's offer into two parts, accepting the price quotation but rejecting Century's standard form contract. The offer made by Century is not susceptible to such a construction. As evidenced by its original offer and by its letter of April 14, Century offered to contract for its quoted price, only if there was agreement to the terms of its standard form of contract. Moreover, as shown by Nolan's letters of March 15 and April 8, 1952, Nolan considered that Century's time schedule of performance should be included in the agreement as an essential part of the formal contract; and this time schedule was never furnished by Century.

Nolan contends that the drawing of the sub-contract by Nolan was to be a purely ministerial act which would not affect the agreement already reached by the parties. There is no merit to this contention. This is not a situation where parties agreed to all the terms of a contract and then became antagonistic before those terms were committed to writing. No agreement as to terms was ever reached here. Century made an offer confined to the terms of its standard form. Century contemplated no discussion of terms when it made its offer; the contract terms were already drawn, and Nolan could bind Century only by an unequivocal acceptance of those terms. Nolan made no such acceptance; as a result, no contract came into being.

For the reasons stated above, the decision of the District Court is affirmed.

Affirmed.