Barney L. BYRUM; Elizabeth Y. Byrum, et ux.; Barney L. Byrum, III; and Spencer N. Byrum, Plaintiffs–Appellees,

v.

BEAR INVESTMENT COMPANY; Edward J. Whitlock, Partner; Robert A. Whitlock, Partner; Albert G. Johnson, Partner; W.W. Whitlock, Agent, Principal Officer W.W. Whitlock Agency, Inc., General Partner and Personally, Defendants–Appellants.

No. 89–1546.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1991.

Decided June 20, 1991.

Charles Roland Haugh, Charles R. Haugh, P.C., Charlottesville, Va., argued (Lair D. Haugh, Charles R. Haugh, P.C. Charlottesville, Va., on brief), for defendants-appellants.

J. Benjamin Dick, Law Offices of J. Benjamin Dick, Charlottesville, Va., for plaintiffs-appellees.

Before WIDENER and WILKINSON, Circuit Judges, and HILL, Senior United States Circuit Judge for the Eleventh Circuit, sitting by designation.

WILKINSON, Circuit Judge:

This case raises questions about when enforceable settlement agreements have been formed. The district court concluded that Barney and Elizabeth Byrum had tendered a valid acceptance to Bear Investment Company's offer to settle their dispute over a parcel of land when the Byrums sent the company a check for the amount specified in the offer and a general release. Although the check sent by the Byrums contained the words "under protest" and the general release stated that the Byrums were "under extreme pressure" to settle in order to save their land,

the district court reasoned that these facts did not prevent an enforceable contract from being formed.

We reverse. No contract to settle was formed here because the Byrums' purported acceptance differed markedly from the acceptance terms intended by Bear Investment Company. Although the law certainly encourages settlements, no litigant should be forced to settle a case on terms that augur future lawsuits. Here, the settlement "under protest" contained within it the seeds of a subsequent challenge to its own enforceability.

## I.

The Byrums are the record owners of a parcel of land in Louisa County, Virginia. As a result of foreclosure, the property was auctioned to Bear Investment Co. ("Bear") in 1979. Before the foreclosure sale was completed, the Byrums brought suit in state court challenging the foreclosure. In 1983, while that litigation was still pending, the Byrums' attorney solicited a settlement offer from Bear. On December 2, 1983, Bear responded with a letter from its representative, W.W. Whitlock. The letter provided three options for returning the land to the Byrums in exchange for a sum of money. The letter also provided that the Byrums must execute a complete general release and that they must understand that the settlement was an "effort to help them. If they [the Byrums] do not feel this is true, then we would not want to have any of the above options completed."

The Byrums responded by letter dated December 16 with a check for $3,000 (as specified under Bear's option number one) and a general release enclosed. The letter noted that the check was being "paid under protest." On the front of the check itself was typed "Purpose: To save Byrums Farm & payoff under protest." Also, the release stated that the Byrums were "under extreme pressure" to settle the case to save their land. Whitlock contends that before he received the check, he telephoned counsel for the Byrums and told him that Bear would not accept a check bearing the

words "under protest." Whitlock asserts that Byrums' counsel assured him that the Byrums' check would not contain the offensive wording. The record does not clearly reflect whether the telephone conversation occurred before or after the check was sent.

By letter dated December 20, 1983, Whitlock objected to the wording on the check and on the release. He also returned the check and release. Whitlock indicated in the letter that the "under protest" language should be stricken from the check and that a general release should be executed free of language expressing reservations about the settlement. Despite Whitlock's efforts and other actions taken by the parties, they never reached a settlement that both sides could agree was satisfactory.

The Byrums eventually brought suit in federal district court, contending that their actions on December 16 constituted a valid acceptance of Bear's December 2 settlement offer. The district court agreed that a settlement agreement had been formed and granted summary judgment for the Byrums. Bear now appeals from that judgment.

## II.

■ Under governing Virginia law, settlement agreements are treated as contracts subject to the general principles of contract interpretation. *Bangor–Punta Operations, Inc. v. Atlantic Leasing, Ltd.*, 215 Va. 180, 207 S.E.2d 858, 860 (1974). The question then of whether an enforceable settlement has been reached is governed by the intent of the parties as objectively manifested. *Montagna v. Holiday Inns, Inc.*, 221 Va. 336, 269 S.E.2d 838, 844 (1980). More specifically, the issue of whether the Byrums' actions on December 16 amounted to a valid acceptance of Bear's settlement offer is controlled by the principle that an acceptance must be unequivocal and unqualified in order to bind the offerer. *Nolan Bros., Inc. v. Century Sprinkler Corp.*, 220 F.2d 726, 728 (4th Cir.1955). A material variance between the acceptance and the offer results in a rejection of the original offer and transforms the putative acceptance into a counter-offer. *Chittum v. Potter*, 216 Va. 463, 219 S.E.2d 859, 863–64 (1975).

■ In our view, the check and general release sent by the Byrums on December 16 were far from an unequivocal acceptance of Bear's settlement offer. Although Whitlock may not have given specific instructions on how the check was to be drawn until after it was mailed, the Byrums should have realized that the words "under protest" expressed an equivocation about accepting the offer. The Byrums, however, contend that the "under protest" language simply expressed their frustrations and their mental reservations about the offer and as such did not prevent a contract from being formed.

We see two difficulties with this argument. First, the Byrums' contention blurs the distinction between unexpressed mental reservations which generally are irrelevant for contract formation purposes and reservations about an offer written into the acceptance which are relevant to determining whether an acceptance is valid. *See Wells v. Weston*, 229 Va. 72, 326 S.E.2d 672, 676 (1985). Second, the "under protest" language on the check cannot be analyzed in isolation, but must instead be read in conjunction with the general release.

The language in the release stating that it was executed "under extreme pressure" further expressed the Byrums' unwillingness to commit completely to settlement. While Bear's original offer did not specify precisely how the release was to be worded, the inclusion of the challenged language is obviously at odds with the expressed intent of Bear to have the release executed as a means of ending a vexatious lawsuit once and for all. For example, the paragraph in Bear's December 2 letter discussing the release states that the Byrums were to recognize that the settlement offer was an effort to help them; otherwise, Bear did not care to consummate the deal. This part of the offer did not require the Byrums to utter some magic words of appreciation, but it certainly did not invite the Byrums to phrase their release in such a

way as to set up a duress or unconscionability claim in the event the settlement was later brought into question.

This is not to say that such claims would be effective or that the Byrums would necessarily assert them in the future. We are simply recognizing that Bear was negotiating for more than an exchange of land for money; it was also bargaining for an end to an acrimonious dispute over the land. The phrasing of the check and release suggested that Bear might be deprived of the benefit of its bargain because the Byrums remained reluctant to end the dispute and appeared to be angling both for the land in an immediate sense and for the return of their money at some future time. For these reasons, we believe that the reservations expressed by the Byrums in their acceptance prevented an enforceable settlement agreement from coming into existence. *See United States v. Newport News Shipbuilding & Dry Dock Co.,* 571 F.2d 1283, 1286 (4th Cir.1978).

The Byrums also argue that even if their December 16 actions did not constitute a valid acceptance, we should consider later negotiations and actions of the parties as evidence that an enforceable settlement contract was formed. Because the district court confined its analysis to the events of December 16 and the record is therefore incomplete on later events, we do not reach the question of whether the parties formed an enforceable agreement at some later time.

### III.

We recognize that the Byrums have a financial and emotional investment in this disputed parcel of farmland. Yet Bear too has a colorable claim to the land. During the parties' attempts to compromise on these competing claims, the Byrums placed Bear in the position of fearing that it was bargaining away any claim to the land in return for a future lawsuit by the Byrums if they remained disgruntled. Bear's concerns about future disputes with the Byrums were anything but fanciful, given the relationship between the litigants—a quarrelsome one characterized by repeated allegations of a conspiracy against the Byrums and by two separate suits the Byrums had brought challenging Bear's claim to the land.

While the law encourages settlements, it also recognizes that a party making a settlement offer retains reasonable control over the terms on which it can be accepted. Because the Byrums' purported acceptance on December 16 varied substantially from Bear's original offer, no agreement to settle the suit was formed at that time, and the judgment of the district court must therefore be reversed and remanded for further proceedings.

REVERSED AND REMANDED.